**ELECTRIC M & R, INC.,**
**Plaintiff, Appellant,**

v.

**BANCO POPULAR DE PUERTO RICO,**
**Defendant, Appellee.**

No. 88–1359.

United States Court of Appeals,
First Circuit.

Heard Nov. 3, 1988.

Decided Dec. 20, 1988.

Harry E. Woods, with whom Geoffrey M. Woods, Gerardo Mariani and Woods & Woods, Hato Rey, P.R., were on brief, for plaintiff, appellant.

Eli B. Arroyo, Hato Rey, P.R., with whom Eugenio Ramos Ortiz, Rio Piedras, P.R., was on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, WISDOM,* Senior Circuit Judge, and TORRUELLA, Circuit Judge.

LEVIN H. CAMPBELL, Chief Judge.

This appeal arises after two trials in a breach of contract action brought in the district court by plaintiff-appellant Electric M & R, Inc. ("Electric"), against defendant-appellee Banco Popular de Puerto Rico ("Banco"). In the first trial, the jury determined that Banco had broken its contractual obligations to Electric, and awarded Electric $103,669 in damages.[1] Upon Banco's motion for judgment notwithstanding the verdict, the district court declined to disturb the jury's verdict that Banco was in breach of contract, but the court awarded Banco a new trial solely on the issue of damages. After Electric had presented its case at the second trial, the district court granted Banco's motion for a directed verdict and dismissed the complaint. Without fully stating its reasoning, the district court ruled in essence that Electric had not offered evidence sufficient to justify a jury finding that *any* damages had flowed from Banco's acknowledged breach.

Electric now appeals from the directed verdict. It contends that the district court erred by excluding evidence, summarized in an offer of proof to the court, that would have proved that Electric had incurred damages of $152,208. Upon our own examination of the record, we conclude that, even if Electric had been allowed to present this excluded evidence, it could not have succeeded, as a matter of law, in establishing that it had suffered damages as a result of the breach. Accordingly, we affirm the directed verdict in favor of Banco.[2]

## I. THE BREACH OF CONTRACT

In the first trial, Banco was found to have violated a contract that arose from the arrangements among three parties: Electric, Banco, and CAM Development Corporation ("CAM"). The following is a summary of the background of these arrangements and the nature of Banco's breach. The facts in this summary are drawn from the parties' pretrial stipulations, the documents placed in evidence, the jury's verdict in the first trial, and the district court's opinion when it granted a new trial on damages. None of these facts are in serious dispute.

In 1979 Electric sold a parcel of land to CAM. Electric loaned funds to CAM for this purchase. To secure this $795,000 loan, Electric maintained three mortgages on the property. The loan did not bear interest. CAM subsequently sought additional funds to finance the construction of 74 housing units on the property. To obtain these funds it entered into a Financing and Pledge Agreement with Banco. Banco provided CAM with a credit line of up to $1,485,135, which was secured by a mortgage on the property.

Because Banco wanted *its* mortgage to have priority over Electric's three preexisting mortgages, the parties negotiated an

---

* Of the Fifth Circuit, sitting by designation.

1. The jury rejected Banco's counterclaim asserting that Electric had coerced Banco into increasing the amount of certain payments it made to Electric. No appeal concerning this counterclaim was taken.

2. In its brief in opposition to Electric's appeal, Banco argues—for the first time—that the case should be dismissed because Electric failed to establish diversity jurisdiction. We reject this argument. The record shows that Electric introduced sufficient evidence—unchallenged by Banco—to show that Electric and Banco were corporate residents of different states (Puerto Rico and Pennsylvania).

agreement in which the three mortgages held by Electric were subordinated to the mortgage held by Banco. Electric, Banco, and CAM all executed a "Deed of Subordination of Mortgage" embodying their agreement on September 5, 1980. In return for agreeing to subordinate its mortgage, Electric received several promises from Banco, some of which were later broken:

1) As part of the three-party Deed of Subordination, Banco agreed to pay $9,000 to Electric upon the completion and sale of each of the 74 lots on the property, to release Electric's mortgage on that portion of the property. After the first 27 houses had been built, this release payment was renegotiated to $11,750 for each lot. Banco subsequently made these payments, and there is no allegation that they were not made in full. Electric ultimately received a total of $798,000 for the release of its mortgages.

2) Also as part of the three-party Deed of Subordination, Banco agreed to notify Electric of any defaults by CAM in its compliance with its Financing and Pledge Agreement with Banco. This promise was evidently included at Electric's behest, to help ensure that CAM would be able to make good on its indebtedness to Electric. Electric was also given the right to cure any defaults by CAM. In fact, CAM failed to comply in many respects with the terms of its Financing and Pledge Agreement with Banco, but Banco did not notify Electric of CAM's defaults.

3) The jury also found that Banco had promised Electric that Banco would enforce its Financing and Pledge Agreement with CAM. Electric was not a party to the Financing and Pledge Agreement, and Banco made no written promise to Electric that it would enforce this agreement. But the jury could have found on either or both of two grounds that Banco had made such a promise:

(a) The Deed of Subordination and the Financing and Pledge Agreement were interconnected documents, executed at the same time and place and serving the needs of all three parties. Because of the interrelatedness of the three documents, the jury could reasonably have found that certain promises in the Financing and Pledge Agreement were made for Electric's benefit. In the district court's view, this would amount to a finding that Electric was a third-party beneficiary of the Financing and Pledge Agreement between CAM and Banco.

(b) Electric introduced evidence of an oral representation made by one of Banco's officers to the president of Electric, to the effect that Banco would enforce the terms of the Financing and Pledge Agreement. Although the district court held that this testimony was inadmissible parol evidence as it related to damages, it admitted the testimony as it related to the question of whether the parties intended that Banco owe enforcement of the Financing and Pledge Agreement to Electric.

Banco broke the above promise to enforce the Financing and Pledge Agreement. In particular, the Financing and Pledge Agreement provided 1) that Banco would limit its loan to CAM, such that the total financing of the project would never exceed $1,485,135; 2) that Banco would not constitute any additional mortgages on the property; and 3) that Banco would call a default on CAM if it failed to meet its obligations. As in the case of Banco's promises in the Deed of Subordination, these provisions were apparently included at Electric's behest, to help ensure that CAM would be able to repay its loans to Electric. Despite these provisions, Banco subsequently loaned funds to CAM in excess of the agreed-upon limit, constituted a fifth mortgage on the property (which was apparently paid off in full or in part before Electric's three mortgages were fully paid), and failed to call a default on CAM despite CAM's many failures to meet its obligations.

In light of the above evidence—some stipulated and some presented at trial—the jury at the first trial determined that Banco had broken its contractual obligations to Electric. As summarized by the district court,

The jury agreed with plaintiff's view of the breaches. It found that Banco Popular promised [Electric] that Banco Popular would enforce the Financing and Pledge Agreement. It found that Banco failed to enforce the Agreement, including not calling default on CAM. It also found that Banco Popular violated the Deed of Subordination. These findings are all based on evidence sufficient to create a question of fact for the jury and therefore stand.

## II. DAMAGES

Although the district court did not disturb the jury verdict that Banco had violated its contractual obligations, it set aside the jury's damages award of $103,669, on the ground that the jury necessarily relied on testimony concerning interest payments that were supposed to be paid by CAM to Electric. (We describe these interest payments below.) This testimony either had not been admitted into evidence or was ruled inadmissible with regard to damages. Because the district court concluded that the jury had based its damages award on inadmissible evidence, the court ordered a new trial on damages.

In the second trial, Electric again sought to introduce evidence about interest payments that were supposed to be paid by CAM to Electric. The district court ruled that this evidence was irrelevant and, therefore, inadmissible. In the absence of any other evidence of damages caused by Banco's breach, the district court awarded a directed verdict to Banco.

To determine the correctness of the district court's ruling, it is necessary to examine Electric's theory of damages. In addition to the Deed of Subordination of Mortgage (executed by Electric, Banco, and CAM) and the Financing and Pledge Agreement (executed by Banco and CAM), a third agreement was contemporaneously executed—a "Modification to Loan Agreement" between Electric and CAM. In this document, CAM agreed that it would pay interest on its indebtedness to Electric—

which had previously been an interest-free loan—at the rate of one percent in excess of Citibank's prime rate. The Modification to Loan Agreement made reference to the release payments to be made by CAM's "institucional [sic] lender" (referring to, without naming, Banco), and made clear that these payments were to be applied to CAM's indebtedness to Electric. The release payments seem to have been calculated to be sufficient to cover the principal, but not the interest, of Electric's loan to CAM.

Electric apparently never received any payments from CAM, aside from the release payments that were paid to Electric by Banco and applied by Electric to CAM's indebtedness. Although evidence of CAM's financial status was not admitted at trial, it appears that CAM went bankrupt or was otherwise rendered unable to pay the remainder of its debt to Electric. Electric contends that it was because of Banco's breaches, as summarized above, that CAM was unable to pay its debt to Electric. In accord with this contention, Electric offers as its measure of damages the total amount of interest and principal owed to Electric by CAM, as offset by the periodic release payments made to Electric by Banco. By Electric's calculations, this amount is $152,208.

■ The district court ruled, however, that these calculations would be relevant to the assessment of damages only if Electric were able to show that it incurred these damages *as a result of Banco's breach.* We agree with this ruling. As Electric concedes, only CAM—and not Banco—was obliged to pay any interest to Electric. In order to prove its damages, therefore, Electric has the burden of showing a causal connection between a) Banco's breaches of its contractual obligations to Electric and b) CAM's failure to pay Electric what it owed. Because Electric was unable to make such a showing, the district court properly excluded as irrelevant Electric's calculations of the allocations of release payments to principal and interest.[3]

**3.** At the first trial, the district court excluded these calculations from evidence, on the ground that they were hearsay—they had been prepared by someone other than the testifying witness,

It is a basic principle of contract law that damages cannot be recovered unless they were in fact caused by defendant's breach. *See, e.g.,* L. Fuller & M. Eisenberg, *Basic Contract Law* 35 (3d ed.1972). Puerto Rico law, which governs in this diversity action, adopts this basic principle. In the leading case of *Gonzalez Mena v. Dannermiller Coffee Co.,* 48 P.R.R. 590, 595 (1935), the Supreme Court of Puerto Rico held that contractual damages are limited to "those foreseen or which might have been foreseen, at the time of constituting the obligation, and *which are a necessary consequence of the failure to comply with it* " (emphasis added). In the present case, Electric has not met its burden of offering evidence that could show the necessary causal connection between Banco's breaches and CAM's failure to make good on its debt.

Electric's only "evidence" of such a causal connection consists of conclusory statements by Vincent Oswald, Electric's president. For example, Oswald testified that if Banco had notified Electric of CAM's breaches of the Financing and Pledge Agreement, Electric would have "taken steps" to cure the defaults:

> Electric's president. At the second trial, Electric was prepared to overcome this hearsay problem by calling as witnesses both the accountant who had made the calculations and a Citibank employee who could attest to Citibank's prime rate at the relevant dates. The district court excluded the calculations at the second trial, no longer because of any hearsay problem but because of their lack of relevance.
>
> In fairness to Electric, the district court's opinion when it ordered a new trial on damages contained language that may well have encouraged Electric to hope that, once the hearsay problem was overcome, the interest calculations would be admissible. In its opinion granting a new trial on damages, the district court stated, [N]o evidence on the amount of damages [was] admitted. Even the oral testimony of [Electric's] officer as to the amount was excluded, because it was based on the excluded document [the calculations].... Without this evidence the jury had no basis for assessing damages. Banco Popular's motion for a directed verdict should have been granted or the plaintiff given an opportunity to remedy the defect in proof. Because the defect can be expected to be cured easily through the testimony of the accountant who prepared the

THE WITNESS [Oswald]: Electric M & R would have gone to C.A.M. and studied the problems and attempted to cure the defaults, as they were called, and monitor the situation very closely.
BY MR. WOODS [Electric's counsel]:
Q .... To what effect, for what purpose?
A The purpose would be to eliminate the cause so that Electric M & R mortgages would be paid in full.

\* \* \* \* \* \*

Q If Electric M & R had been given notice of the defaults of C.A.M. by Banco Popular ..., what would Electric M & R have done right from the inception to avoid its damages of $154,871.06?
A Electric M & R could have taken all the steps necessary to either take it out of the situation or control it.

Oswald gave no indication of *what* steps Electric would have taken to avoid or control "the situation." Nor does Electric offer any evidence to show that such steps would have been successful. The district court could properly regard Oswald's conclusory statements as insufficient to permit a jury to decide that Banco's breach caused damage to Electric.

> document or the introduction of other evidence, a new trial on damages is proper.
> Still, as the district court held at the second trial, the calculations were relevant only if a causal connection were shown between Banco's breach and CAM's failure to pay its debt to Electric. In its same new trial order on damages, moreover, the court indicated its concern over evidentiary deficits in respect to causality, saying that these left "fact determinations ... for the new trial." *See infra,* p. 1060.
>
> Electric protests not only the district court's refusal to admit its calculations, but also the district court's exclusion of evidence of an oral representation by a Banco official to Electric's president that endorsed the procedure of applying Banco's release payments first to the interest and then to the principal of CAM's indebtedness to Electric. The district court held that this was inadmissible parol evidence under the relevant Puerto Rico statute. Electric disputes the district court's interpretation of the parol evidence rule. But we need not delve into this issue. As in the case of the calculations, any such oral representation would be irrelevant unless Electric could show a causal connection between Banco's breaches and CAM's failure to pay its debt.

■ Oswald also testified that Banco's loan to CAM in excess of the agreed-upon limit, as well as its constituting a fifth mortgage on the property (in violation of the Financing and Pledge Agreement), had the effect of depriving Electric of funds that CAM was obligated to pay Electric. But this testimony, too, remained at a general and conclusory level:

BY MR. WOODS:

Q. By paying off the Banco Popular fifth mortgage ahead of the second, third and other mortgages of M & R, were there sufficient funds to pay off the balance due to Electric M & R of its three mortgages of $154,871.06?

MR. ARROYO [Banco's counsel]: Leading.

THE COURT: Overruled.

THE WITNESS: No, there was not enough money left to pay that up.

Electric did not offer any specific evidence to support the conclusion that Banco's additional loan to CAM had the effect of rendering CAM unable to repay its loan from Electric. Nor did Electric offer specific evidence to show that CAM would have been able to pay off the balance of the loan—or any portion of that balance—even if Banco *had not* constituted the fifth mortgage. Again, Electric's evidence fails to establish a causal connection between Banco's breach and Electric's alleged loss.

Electric should not have been surprised by the district court's conclusion that it failed, as a matter of law, to prove its damages. After the first trial, in its order for a new trial on the issue of damages, the district court noted:

[N]o evidence was offered showing that CAM could not meet its obligations to [Electric]. Nor was there any evidence, other than the testimony of Mr. Oswald, that CAM's alleged inability to pay off the balance was caused by Banco Popular's breaches. These are fact determinations left for the new trial.

In the second trial, however, Electric introduced no further evidence bearing on these questions.

The failure of Electric's proof of damages is pointed up by the following statement in its brief, which is characteristic of Electric's argument more generally:

The amount of money paid by CAM to Banco Popular in respect of the fifth mortgage amounted to $430,178.00. As stated hereinabove the amount of money owed by CAM to Electric in excess of the $798,000 actually paid, is $152,208.83. *Thus, had Banco Popular not acted as it did, CAM would have paid Electric.* Therefore, the unpaid portion of CAM's (principal and interest) obligation to Electric is the appropriate measure of Banco Popular's damage to Electric.

(Emphasis added.) Electric puts forth this argument as if it were a logical syllogism. But, in fact, the sentence beginning with "Thus" is not a logical consequence of the sentences preceding it. It is Electric's burden to show that Banco's breaches *in fact* led to a loss to Electric. This burden can be met only by means of concrete evidence, not "logical" abstractions.

In its brief, Electric argues that the district court granted the directed verdict to Banco Popular because it misunderstood Electric's theory of damages. According to Electric, the district court incorrectly concluded that Electric was making the illegitimate argument that Banco had assumed CAM's obligation to pay interest to Electric. There are indeed points in the trial transcripts at which the district court seems to be interpreting Electric's theory of damages in this way. These statements by the district court may or may not be attributable to ambiguities or shifts in the way Electric itself presented its theory of damages to the court. In any event, our review of the record as a whole indicates that the district court understood Electric's theory of damages, but that it supportably and properly determined that Electric could not prove damages under its theory.[4]

4. When it granted the directed verdict, the district court observed that "The plaintiff could have protected himself by simply putting a provision in the loan agreement and in the subordi- nation with Banco, ... saying ... that [Banco] assume[s] the obligation with CAM concerning these notes including the further obligation of interest." Electric quotes this observation in

We have carefully considered Electric's other arguments and find no reason to reverse the judgment below.

## III. CONCLUSION

The directed verdict for Banco arises from the basic proposition that breaches of contract do not necessarily lead to recoverable damages. In order to recover damages, the plaintiff must show that its losses were caused by the defendant's breach. In this case, Electric was unable to make such a showing. As a result, the district court properly directed a verdict in Banco's favor.

AFFIRMED.

See also 683 F.Supp. 63.

support of its contention that "the trial judge ... misinterprets the nature of the damages, erroneously believing that the only way Banco Popular could be liable for the principal and interest not paid to Electric by CAM would be if Banco Popular had contractually assumed the obligation." But the quoted statement by the district court betrays no such misconception. The district court neither said nor implied that Banco could be held liable for damages *only* if it had contractually assumed CAM's obligations. The district court simply observed—correctly— that Electric could have protected itself by inserting such a provision.