Luis RIOFRÍO ANDA; Sylvia Marisol Unda González, and the conjugal partnership constituted by both, Plaintiffs,

v.

RALSTON PURINA COMPANY; Van Camp Seafood Company, Inc., and National Packing Company, Defendants.

Civ. No. 89–645 HL.

United States District Court,
D. Puerto Rico.

May 15, 1991.

Harry Anduze Montaño, Guillermo Ramos Luiña, Hato Rey, P.R., for plaintiffs.

O'Neill & Borges, Francisco M. Ramírez Rivera, Pedro A. Delgafo Hernándêz, Hato Rey, P.R., for defendants.

## OPINION AND ORDER

LAFFITTE, District Judge.

In this diversity action plaintiffs sued for breach of an employment contract. A jury returned a verdict in favor of plaintiffs for $16,250 as salary due[1] and $48,750 for relocation expenses. Defendants argue that the relocation award is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 88 Stat. 829, as amended, 29 U.S.C. § 1001 *et seq.*, rather than Puerto Rico contracts law and alternatively, that under Puerto Rico law, the jury award is not supported by the evidence. Defendants move for a judgment notwithstanding the verdict (j.n.o.v.)[2] or a remittitur. Defendants also dispute the amount of attorney's fees and costs requested by plaintiffs. After due deliberation the Court grants defendants' motion for j.n.o.v. as to the relocation award.

## I.  BACKGROUND

Plaintiffs Luis Riofrío Anda ("Riofrío") and his wife Sylvia Marisol Unda González are citizens of Ecuador and are now living in Ponce, Puerto Rico. Defendants National Packing Company, its parent company Ralston Purina Co. and Van Camp Seafood, a Ralston division (collectively "Ralston") sought to hire Riofrío, an engineer in fishing technology, as the Quality Control Manager of Ralston's tuna and fishing products plant located in Ponce, Puerto Rico. Ralston invited Riofrío to San Diego to discuss the possibility of employment, and after visiting Puerto Rico at Ralston's expense, Riofrío accepted the offer and began working for Ralston in November 1984. Ralston paid for the transportation of plaintiffs' household goods from Ecuador and, since plaintiffs decided not to bring their automobile, Ralston paid plaintiffs the equivalent of freight and customs duties which plaintiffs applied toward the purchase of an automobile upon their arrival.[3] Ralston terminated Riofrío's employment in February of 1988.

A contested issue at trial, and the primary issue now before the Court, involved relocation expenses. Riofrío claims that the offer of employment contemplated moving expenses back to Ecuador upon termination. Plaintiffs thus sought $50,000.00 for expenses pertaining to the relocation of their household goods and $55,000.00 for their automobile. Plaintiffs, however, never left Puerto Rico, arguing that they lacked the necessary funds to do so. Nonetheless, based on estimates of experts who testified as to the "book value" of the cost of moving plaintiffs' belongings from Ponce to Quito, Ecuador, the jury awarded plaintiffs $48,750.00.

Pursuant to Ralston's overseas relocation policy, the company claims it has always been willing to either undertake the responsibility of moving plaintiffs back to Ecuador or reimburse plaintiffs for expenses actually incurred in their return trip. Specifically, Ralston offered to pay for "[r]eturn passage from Ponce to Quito

---

**1.** Evidence showed that defendants had promised to pay a higher salary than that which plaintiff actually received. The jury award in plaintiffs' favor in this regard is not contested.

**2.** Defendants' motion for j.n.o.v. is a renewal of their motion for a directed verdict, denied at trial. *See Freeman v. Package Machinery Co.,* 865 F.2d 1331, 1343 (1st Cir.1988) (taking a stringent view of the requirement that a directed

verdict motion be a prerequisite to a motion for j.n.o.v.).

**3.** In 1985, National Packing issued a check to the order of Audi Volkswagen de Ponce on plaintiffs' behalf in the amount of $3,750.00—equivalent to freight expenses and taxes on a 1985 Audi 4000.

for [Riofrío] and his family, including coach airfare and travel expenses; [the] cost of moving one automobile from Ponce to Quito, up to a maximum of $5,000.00;[4] and [m]oving (packing, loading, transporting, unloading, unpacking and insurance) of all household furnishings and personal effects...." Exhibit F, Defendant's Motion for Summary Judgment. According to Ralston, its relocation policies are designed to "make the employee whole for the moving expenses he might incur in moving ... back to the point of origin after the relationship with the Company ends." Attachment 1, Defendants' Motion for Summary Judgment at 8. Yet Ralston cautions that "[t]he policy is not construed to provide employees for windfall profits for expenses not actually incurred." *Id.*

The basis for Ralston's motion for j.n.o.v.—indeed a claim that defendants have reiterated throughout this litigation— is its contention that the company's relocation policies are part of a welfare benefit plan for employees and as such, the plan falls within the ambit of ERISA. In so arguing, Ralston attempts to seek refuge in ERISA's broad federal preemption provisions as a legal defense to otherwise applicable Puerto Rico law. *See* 29 U.S.C. § 1144(a); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983). An alternative basis for Ralston's motion for j.n.o.v. is its contention that the award of damages is contrary to Puerto Rico law since plaintiffs failed to present any evidence indicating that they actually incurred damages. In the event that the motion for j.n.o.v. fails, defendants seek a remittitur striking the award of $48,750.00 for relocation expenses as grossly excessive.

## II. DISCUSSION

The standard used to evaluate a motion for a directed verdict or a j.n.o.v., pursuant to Rule 50, Fed.R.Civ.P., poses a heavy burden on the moving party. The evidence must be viewed in a light most favorable to the verdict winner. *Aggarwal v. Ponce School of Medicine,* 837 F.2d 17, 19 (1st Cir.1988); *Insurance Company of North America v. Musa,* 785 F.2d 370, 372 (1st Cir.1986). In so doing, the Court recognizes that it may not " 'weigh the evidence [nor] pass on the credibility of witnesses, nor substitute its judgment for that of the jury.' " *Aggarwal,* 837 F.2d at 19 (citation omitted); C. Wright & A. Miller, *Federal Practice and Procedure* § 2524 (1971). Rather, the Court must simply weigh the sufficiency of the evidence to determine whether it fairly supports the jury's findings. The verdict must be upheld if " 'fair minded men may draw different inferences and reasonably disagree as to what the verdict should be.' " *Aggarwal,* 837 F.2d at 19 (quoting *Dumas v. MacLean,* 404 F.2d 1062, 1064 (1st Cir.1968).

A slightly more liberal standard governs a motion for a remittitur. A movant's request for a remittitur, pursuant to Rule 59(e), Fed.R.Civ.P., allows a court to alter or amend the judgment and set aside a jury award even though there is substantial evidence to support it. C. Wright & A. Miller, *Federal Practice and Procedure,* § 2806 (1973). The Court need not "take that view of the evidence most favorable to the verdict-winner. The mere fact that evidence is in conflict is not enough to set aside the verdict.... [Rather] the judge is free to weigh the evidence for himself." *Id.* But a court should refrain from overturning a jury verdict unless it is evident that the jury has reached "a seriously erroneous result." *Borras v. Sea–Land Service, Inc.,* 586 F.2d 881, 887 (1st Cir.1978) (citations omitted).

The First Circuit has sharpened the edges of this standard, stating that the verdict must be "so clearly against the weight of the evidence as to constitute a manifest miscarriage of justice." *Hubbard v. Faros Fisheries, Inc.,* 626 F.2d 196, 200 (1st Cir.1980); *accord Milone v. Moceri Family, Inc.,* 847 F.2d 35, 37 (1st Cir.1988). A jury is afforded broad latitude in its

**4.** This provision limiting the cost of relocating an employee's car to his country of origin to $5,000.00 went into effect on January 1, 1988, slightly over a month prior to Riofrío's termination. *See* Exhibit A, Defendants' Motion for Summary Judgment.

assessment of damages, "so long as the end result does not violate the conscience of the court or strike such a dissonant chord that justice would be denied were the judgment permitted to stand." *Milone*, 847 F.2d at 37. Nevertheless, a jury award must be reasonable, supported by the evidence, and not excessive. *See Heddinger v. Ashford Memorial Community Hospital*, 734 F.2d 81 (1st Cir.1984); *Flores Caraballo v. Lopez*, 601 F.Supp. 14 (D.P.R.1984). The Court turns now to defendants' argument that the policies pertaining to the distribution of relocation benefits constitutes a "plan" within the purview of ERISA.

## A. *ERISA*

■ ERISA is a comprehensive statute designed to protect the interests of employees in benefit plans. Broadly speaking, its purpose is twofold: by federalizing much of the employment pension and benefit law ERISA promotes uniformity among state and local benefit plans, and through its imposition of fiduciary responsibilities and its requirements for reporting, disclosure, funding, and vesting, ERISA creates safeguards to preclude abuse in the mismanagement of funds accumulated to finance employee benefits.[5] *See generally Ingersoll–Rand Company v. McClendon*, —— U.S. ——, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990); *Shaw v. Delta Air Lines, supra*, 463 U.S. 85, 103 S.Ct. 2890; H.R.Rep. No. 93–533, 93d Cong.2d Sess., *reprinted in* U.S.Code Cong. & Ad. News 4639 (1974).

"Employee benefit plans" under ERISA include "employee welfare benefit plans," 29 U.S.C. § 1002(1) or "employee pension benefit plans," 29 U.S.C. § 1002(2). Ralston asserts that its relocation policies constitute an "employee welfare benefit plan" which is defined as

any plan ... established or maintained by an employer or by an employee organization, or by both, to the extent that such plan ... was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title [§ 302(c) of the Labor–Management Relations Act] (other than pensions on retirement or death, and insurance to provide such pensions).

Section 3(1) of ERISA, 29 U.S.C. § 1002(1). Ralston notes that relocation benefits are not expressly written into the statute, but suggests that its policies are meant to provide assistance following the termination of employment and are thus akin to "benefits in the event of ... unemployment" under subsection (A) above.

Ralston cites *Holland v. Burlington Industries, Inc.*, 772 F.2d 1140, 1147 (4th Cir.1985) for support of its broad reading of the statute's definitions. The *Holland* Court, however, discussed the breadth of ERISA in the context of its preemption provisions, and specifically, the meaning of "relate to" as found in 29 U.S.C. § 1144(a) which dictates that "any and all state laws ... [that] relate to any employee benefit plan" covered by ERISA shall be preempted. *See Id.* at 1146–47. Noting that ERISA has been called " 'the most sweeping federal preemption statute ever enacted by Congress,' " *Id.* at 1146 (citations omitted), that the Supreme Court has held that the preemption language be given broad effect, *see Shaw v. Delta Air Lines*,

---

5. Although ERISA imposes stringent reporting and disclosure requirements, *see* 29 U.S.C. §§ 1021–1031, as well as fiduciary standards for management of plan assets, 29 U.S.C. §§ 1101–1114, an employer's failure to comply does not, by itself, take the plan outside the coverage of ERISA. *See Young v. Standard Oil*, 849 F.2d 1039, 1045 (7th Cir.1988); *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1503 (9th Cir.1985); *see*

*also Donovan v. Dillingham*, 688 F.2d 1367, 1372 (11th Cir.1982) (The Act's reporting provisions are merely responsibilities of administrators and not prerequisites to coverage). It would be incongruous for an employer to be able to circumvent the Act, and its federal preemption provisions, simply through noncompliance. *Donovan*, 688 F.2d at 1372; *Scott*, 754 F.2d at 1503.

463 U.S. at 96–97, 103 S.Ct. at 2899–2900, and that Congress rejected a narrower pre-emption provision, the *Holland* Court had little trouble concluding that the state law before it was well within a "broad reading of the phrase 'relates to' " necessitated by the "unparalleled breadth of ERISA's pre-emption provision." *Id.* at 1147.

The Court is not persuaded that such a broad construction is justified when applied to the definition of "welfare benefit plan." In contrast to the preemption provisions, Congress carefully constructed the definitional sections of ERISA. In response to questions concerning the scope of these sections, the Department of Labor ("DOL") issued regulations to clarify the limits of the defined terms. 29 C.F.R. § 2510.3–1(a) dictates that "only plans which provide benefits *described* in section 3(1)(A) of the Act or in section 302(c) of the Labor–Management Relations Act [29 U.S.C. § 1002(1) or § 186(c) ] . . . constitute welfare plans." (emphasis added). The DOL provides the example of payroll deductions for deposit into an employee's savings account as beyond the sphere of ERISA since such a practice is not "described" in the Act. Given this strict construction, the Court finds that relocation expenses are not unemployment benefits within the meaning of § 1002(1)(A).

In an attempt to circumvent the list of applicable benefit plans, Ralston asserts that relocation expenses are similar to severance benefits and therefore are included in subsection (B) of § 1002(1). This subsection refers to benefits described in § 186(c), which adds "pooled vacation, holiday, severance or other similar benefits" to the list of employee welfare benefits. *See* 29 U.S.C. § 186(c)(6). This last phrase—"other similar benefits"—is not a catch-all provision; rather it describes those benefits "which are in substance severance benefits, although not so characterized." 29 C.F.R. § 2510.3–1(a)(3).[6]

The Court rejects Ralston's contention that company policies offering to reim-burse employees for relocation expenses upon termination of employment are "in substance severance benefits." Defendants argue that relocation benefits are similar to severance benefits to the degree that they are meant to assist an employee who, by some unforseen contingency, becomes unemployed. Indeed, courts that have held that an unfunded severance policy is within the purview of ERISA, stress that severance benefits require a disbursement of funds upon termination of employment, whereas "payroll practices"—beyond ERISA's ambit—generally require "disbursements of funds easily analogized to ordinary wages, and the payments involved invariably take place during the term of employment." *Scott v. Gulf Oil Corp.,* 754 F.2d at 1503. *See also Holland v. Burlington Ind.,* 772 F.2d at 1146 ("payroll practices refer to general asset compensation during employment; severance pay . . . occurs after termination of employment"); *Gilbert v. Burlington Ind.,* 765 F.2d 320, 326 (2d Cir.1985) (distinguishing severance pay from other unfunded payroll practices since it occurs after termination).

While relocation benefits are more akin to severance benefits than benefits that pertain to regular wages, the Court looks beyond this similarity to the purpose of ERISA. The Court's interpretation of the scope of the Act is not " 'guided by a single sentence' " but rather by " 'the provisions of the whole law . . . its object and policy.' " *Massachusetts v. Morash,* 490 U.S. 107, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1989) (quoting *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 51, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987)).

Congress enacted ERISA in order to combat "abuse and mismanagement of funds that had been accumulated to finance various types of employee benefits." *Morash,* 109 S.Ct. at 1671 (citing *Ford Halifax Packing Co. v. Coyne,* 482 U.S. 1, 15, 107 S.Ct. 2211, 2219, 96 L.Ed.2d 1 (1987). To that end, ERISA established elaborate reg-

**6.** Congress has officially sanctioned the Secretary of Labor's authority to interpret ERISA in this manner. *See* 29 U.S.C. § 1002(2)(B).

ulations designed to safeguard employee benefits. One such measure is ERISA's complex reporting requirements, created to oversee the fiduciary obligation imposed on employers and plan administrators. *See* 29 U.S.C. §§ 1021–1031, 1101–1114. These rules concerning reporting are necessary to " 'completely secure the rights and expectations' " of benefit recipients. *Ingersoll–Rand, supra,* 111 S.Ct. at 482 (quoting S.Rep. No. 93–127, p. 36 (1973) U.S.Code Cong. & Admin.News 1974 pp. 4639, 4872). This is so because most ERISA plan benefits accumulate over a period of time. Severance pay, for example, depends on an employee's salary and length of service. This type of benefit is earned by the employee and acts as an incentive to continued employment.

■ Relocation benefits, on the other hand, are fixed. They do not depend on the tenure of employment but are instead based merely on a moving company's estimate. As such, payments need not be satisfied out of a separate accumulated fund and an employer need not be subject to otherwise stringent reporting and disclosure requirements. The Court thus views Ralston's promise to pay for plaintiffs' relocation to Ecuador as a contract rather than an employee welfare benefit plan under ERISA. Accordingly, defendants may not invoke ERISA's federal preemption as a legal defense. The Court turns its attention to defendants' alternative argument, that the award of relocation expenses is contrary to Puerto Rico law.

### B. *Puerto Rico Law*

■ Plaintiffs' claim for damages is based on Article 1077 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. ("L.P.R.A.") § 3052, which provides that as a result of a breach of contract "[t]he person prejudiced may choose between exacting the fulfillment of the obligation or its rescission, with indemnity for damages and payment of interest in either case." An action for damages, however, cannot prosper based

on mere nonperformance; rather a plaintiff must "establish[ ] the real and positive existence of the damages caused," *Perez v. Sampedro,* 86 P.R.R. 498, 503 (1962), for it is "essential to *justify their reality* and the direct relation … with the facts giving rise to them." *Rutledge v. Gill,* 78 P.R.R. 665, 679 (1955) (emphasis in original); *see also Computec Systems Corp. v. General Automation, Inc.,* 599 F.Supp. 819, 827 (D.P.R.1984) (creditor must prove existence of damages to enable court to issue award); Article 1054, 31 L.P.R.A. § 3018; *see generally* Judgments of the Supreme Court of Spain, December 22, 1930; December 19, 1930; June 23, 1925.[7]

■ Unless damages actually exist and are sufficiently proved, there can be no compensation, since Puerto Rico law does not sanction punitive damages. *Noble v. Corporacion Insular de Seguros,* 738 F.2d 51 (1st Cir.1984); *Computec Systems,* 599 F.Supp. at 827; *Carrasquillo v. Lippitt & Simonpietri, Inc.,* 98 P.R.R. 646 (1970). Manresa, in his seminal treatise on the Civil Code, explains that, were this the case,

> the compensation would lose its natural character, acquiring that of a penal sanction, a concept entirely different from that contained in [Article 1054, 31 L.P.R.A. § 3018], in which case the nonfulfillment would not by itself imply said existence of damages so as to release the plaintiff from presenting evidence of such damages, since evidence of the two facts, namely, the *nonfulfillment and the damage,* is indispensable."

Manresa, *Spanish Civil Code* § 8–1 at 152–53 (emphasis added).

The Supreme Court of Puerto Rico, in *Rutledge v. Gill, supra,* had occasion to consider this issue. There, Rutledge agreed to allow Gill the right to operate an ice cream store using Rutledge's trademark on the condition that Gill buy ice cream mix exclusively from Rutledge. When Gill changed the name of the store and began buying mix from another supplier, Rutledge sued him for breach of con-

---

**7.** Nonperformance of a contractual obligation, without more, does not give rise to damages under Article 1124 of the Spanish Civil Code, which is equivalent to Article 1077 of the Puerto Rico Civil Code.

tract, but not before he sold his trademark to a third party. The Court held that, although Gill had indeed breached his agreement, Rutledge could not recover damages beyond the date that he sold the property rights in the trademark. *Id.* at 679. Similarly, in *Gonzalez v. Centex Construction Co.*, 103 P.R.R. 116 (1974), the court withheld a damages award to plaintiffs for repairs on their house, since they no longer owned it.

■ Here, plaintiffs admit that they have not yet incurred expenses in moving to Ecuador. They argue that they have suffered damages nonetheless, since they have been "stranded" in Puerto Rico, lacking the necessary funds to return home. The flaw in this argument is that it confuses damages for mental anguish with compensation for actual damages incurred. Although Puerto Rico recognizes moral damages for breach of contract, *see Pereira v. I.B.E.C.*, 95 P.R.R. 28, 55–59 (1967), moral damages for emotional distress will not be awarded unless evidence establishes that the mental condition of the claimant has been *considerably* affected. *See Lameiro v. Davila,* 103 D.P.R. 834 (1975); *Duchesne Landron v. Ruiz Arroyo,* 102 D.P.R. 699 (1974).[8] No such evidence has been established in this action.

■ Contrary to common law, under civil law a plaintiff is not barred from seeking specific performance even though an adequate remedy lies in damages. *Vazquez v. Superior Court,* 78 P.R.R. 707, 712 (1955). Nevertheless, plaintiffs chose not to travel this route, nor did they seek reimbursement for expenses actually incurred. The only evidence submitted with respect to actual relocation damages was a moving company's estimate. This evidence, albeit reliable, simply fails to appropriately respond to the requirement that plaintiffs prove the actual existence of damages. *See Electric M & R v. Banco Popular de Puerto Rico,* 863 F.2d 1055, 1059 (1st Cir.1988). Consequently, the jury

award based on this estimate is tantamount to the levy of punitive damages which cannot stand under Puerto Rico law. Accordingly, the Court grants defendants' motion for j.n.o.v. with respect to the $48,750.00 award for relocation expenses.

### C. *Attorney's Fees*

Prior to trial, defendants conceded that judgment on plaintiffs' claim pursuant to Puerto Rico's Discharge Indemnity Law, Act No. 80, May 30 1976, as amended, Article 1, 29 L.P.R.A. § 185a ("Law 80") should be entered against them. Under Law 80, indemnity is computed on the basis of one month's pay, plus one week's salary for each year of service. 29 L.P.R.A. § 185a(a)-(b). Accordingly the parties stipulated that plaintiffs are entitled to $6,891.93. Beyond this agreed upon figure, the parties dispute the appropriate amount of attorney's fees to be awarded.

■ Law 80 requires that the employer-defendant compensate the employee with attorney's fees "which shall never be less than fifteen (15) percent of the total of the compensation." 29 L.P.R.A. § 185k(a). Plaintiffs submit that, owing to the amount of work and time invested in this litigation, including travel to Missouri to take three depositions, 30% of the total compensation, or $2,058.58 in attorney's fees is warranted. Defendants argue that plaintiffs should be restricted to receiving 15% of the stipulated amount, or $1,029.29, since plaintiffs did not have to try the Law 80 claim and since the Law 80 claim was but one of several causes of action in the complaint. The Court notes that defendants did not concede the Law 80 claim until immediately prior to trial, necessitating extensive preparation. Therefore, the Court finds that 25% of the total compensation, or $1,715.48 is appropriate here.

Beyond these statutorily mandated attorney's fees, plaintiffs have applied for attorney's fees pursuant to Rule 44.1(d), 32

---

**8.** Cases that have interpreted the more liberal standard of awarding compensatory moral damages under Puerto Rico tort law, governed by article 1802 of the Puerto Rico Civil Code, still require a showing that in "'some *appreciable* measure the health, welfare and happiness of the claimant were *really* affected.'" *Ruiz–Rodriguez v. Colberg–Comas,* 882 F.2d 15, 17 (1st Cir.1989) (emphasis in original) (quoting *Moa v. Commonwealth,* 100 P.R.R. 572, 585–86 (1972).

L.P.R.A., App. III, as amended, which, in relevant part, states that a court shall impose attorney's fees in "the event any party or its lawyer has acted obstinately or frivolously...." Also, plaintiffs seek prejudgment interest which is similarly mandated when a party has "acted imprudently." Rule 44.3(b), 32 L.P.R.A., App. III, as amended.[9] This Court has noted previously that "[t]he mere fact that a plaintiff recovers a jury verdict, without more, is not sufficient ground for an award of attorney's fees." *Reyes v. Banco Santander De P.R., N.A.*, 583 F.Supp. 1444, 1445 (D.P.R.1984). Rather, the party or the attorney must be " 'stubbornly litigious' " causing " 'unnecessary inconveniences and expenses.' " *Id.* (quoting *Rivera v. Rederi A/B Nordstjernan*, 456 F.2d 970, 975 (1st Cir.1972); *see also Pereira v. I.B.E.C.*, 95 P.R.R. 28, 66 (1967) (failure to impose attorney's fees where there was no finding of obstinacy was not error).

■ Here, plaintiffs claim that defendants have litigated their case in "utter disregard of the facts and the law,"[10] but the record clearly indicates otherwise. Defendants did not raise defenses willy nilly; rather they pursued consistent arguments throughout the litigation process that were neither frivolous nor baseless. *Cf. Lopez v. Corporacion Insular de Seguros*, 931 F.2d 116 (1st Cir.1991) (affirming this Court's award of prejudgment interest and attorney's fees where defendant was unreasonably pertinacious). Indeed where, as here, novel issues are raised, a party cannot be held as obstinate. *Marina Ind., Inc. v. Brown Boveri Corp.*, 114 D.P.R. 64 (1983). Accordingly, plaintiffs' request for attorney's fees and prejudgment interest is denied.

### D. *Bill of Costs*

■ The remaining post-judgment dispute concerns plaintiffs' Bill of Costs totaling $4,015.84. Unlike a determination of prejudgment interest and attorney's fees, which, pursuant to the *Erie Doctrine*,[11] requires a federal court sitting in diversity to look to applicable state law, *supra* n. 9, taxation of costs are governed by Rule 54(d) of the Federal Rules of Civil Procedure. *Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1348 n. 13 (1st Cir. 1988); *Bosse v. Litton Unit Handling Systems*, 646 F.2d 689, 695 (1st Cir.1981); *Paul N. Howard Co. v. Puerto Rico Aqueduct & Sewer Auth.*, 110 F.R.D. 78, 80–81 (D.P.R.1986).[12] Rule 54(d) entitles the prevailing party to costs "as of course ... unless the court otherwise directs." In *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 235, 85 S.Ct. 411, 416, 13 L.Ed.2d 248 (1964), the Supreme Court that costs not expressly provided for by statute, should be taxed sparingly.[13] The Court considers plaintiffs' respective requests in turn.

■ First, plaintiff seeks reimbursement for messenger services and fax transmittal, amounting to $92.00. Plaintiffs seek an exception to the general rule that these expenses are not taxable as costs, *see Penn Central Transportation Co.*, 630 F.2d 183, 192 (3rd Cir.1980); *Wahl v. Carrier Manufacturing Co., Inc.*, 511 F.2d 209 (7th Cir.1975), since they were responding to eleventh hour motions and had little choice. The Court finds that these expenses were incurred in the normal course of litigation. As such they are not taxable as costs.

**9.** In diversity cases the First Circuit has recognized attorney's fees to be a matter of substantive right, governed by state law. *See Navarro de Cosme v. Hospital Pavía*, 922 F.2d 926, 934 (1st Cir.1991); *Pan American World Airways, Inc. v. Ramos*, 357 F.2d 341, 342 (1st Cir.1966).

**10.** *See* Plaintiffs' Opposition to Motion for J.N.O.V. at 14.

**11.** *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**12.** Where costs constitute part of a state's statutory substantive remedy, a federal court sitting in diversity should apply state law. Here, however, costs are merely part of Puerto Rico's general procedural provisions, and are not likely to either promote forum shopping or affect the outcome of the litigation. *Bosse v. Litton Unit Handling Systems, supra*, at 695 (construing 10 Wright & Miller & Kane, *Federal Practice and Procedure*, § 2269 at 153 (1973)).

**13.** 28 U.S.C. § 1920 lists costs that are statutorily available.

Second, plaintiffs claim they are entitled to $1,483.14 for airfare and lodging expense incurred while taking depositions of defendants' employees at defendants' headquarters in St. Louis, Missouri. Travelling expenses in relation to the taking of depositions are generally not taxed as costs, save in exceptional circumstances. 10 C. Wright & A. Miller & M. Kane, *Federal Practice & Procedure*, § 2676 at 338; *see also J.T. Gibbons v. Crawford Fitting Co.*, 760 F.2d 613, 616 (5th Cir. 1985) *aff'd*, 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987) (costs for travel expenses reserved for vexatiousness); *City Bank of Honolulu v. Rivera Davila*, 438 F.2d 1367, 1371 (1st Cir.1971) (deposition travel costs not taxable). Exceptional circumstances being absent here, travel expenses shall not be taxed as costs.

Plaintiffs next request $180.00 in special process service fees. 28 U.S.C. § 1920 authorizes costs for service conducted by the United States Marshals Service, but there is no statutory authorization for costs where private process servers are used. *See generally* Federal Rules of Civil Procedure 4(c). In *Zdunek v. Wash. Metro Area Transit Auth.*, 100 F.R.D. 689, 692 (D.C.D.C.1983), the court denied costs for special process on the basis that exceptional circumstances requiring the use of professional process servers were absent. However, *Cross v. General Motors Corp.*, 563 F.Supp. 368, 370 (E.D.Mo.1982), and *Roberts v. Homelite Div. of Textron, Inc.*, 117 F.R.D. 637, 641 (N.D.Ind.1987) allowed private process fees as costs. The Court adheres to the considered opinion in *Homelite*, where the court deemed costs appropriate in light of the trend toward substitution of private process servers for the U.S. Marshals Service. Accordingly, plaintiffs are allowed $180.00 in special process service fees.

Plaintiffs also seek to recover $1,959.60 incurred in the cost of five deposition transcripts, one of which was used at trial. Under 28 U.S.C. § 1920(2), a party may recover court reporter expenses incurred in the taking of depositions so long as the deposition is "necessarily obtained for use in the case." This does not mean that depositions must be used at trial in order to be taxed as costs. Rather, the determining factor is whether "the deposition reasonably seemed necessary at the time it was taken." C. Wright & A. Miller & M. Kane, *Federal Practice & Procedure*, § 2676 at 341; *see also Hudson v. Nabisco Brands, Inc.*, 758 F.2d 1237 (7th Cir.1985). But depositions that are "investigative or preparatory in character, rather than for the presentation of the case, typically are not taxable." 10 Wright & Miller & Kane, *supra*, § 2676 at 345.

The Court finds that plaintiffs may recover expenses for the depositions of Fred Avers, and Alfredo Pagan, as these transcripts were used at trial and in response to a dispositive motion, respectively. Plaintiffs may also recover the expenses of the translator retained in connection with the deposition of Mr. Pagan. *See* 10 Wright & Miller & Kane, *supra*, § 2676 at 337 (incidental costs related to deposition expenses may be recovered). Plaintiffs are also entitled to costs relating to the depositions of Madelaine Parks and Bernd Peemoller, whose depositions related to plaintiffs' Law 80 claim, even though this claim was not pursued at trial. Plaintiffs cannot recover for the deposition of Carlos Torres. This witness was not announced and plaintiffs have not shown that the deposition was necessary at the time it was taken. Therefore, plaintiffs are entitled to $1,600.00 in costs corresponding to the taking of depositions.

The remaining items on plaintiffs' Bill of Costs—$120.00 for filing fees, $105.00 for appearance and mileage fees for witnesses, and $36.00 for interpreter fees at trial—are unopposed, and are therefore granted.

### III. CONCLUSION

Ralston's motion for j.n.o.v. with respect to the jury award of $48,750 for relocation expenses is hereby granted. Pursuant to the jury award for salary due, and the parties' stipulation with respect to the Law 80 claim, plaintiffs shall recover $16,250.00 and $6,861.93, respectively. Furthermore, plaintiffs are hereby awarded $1,715.48 in

attorney's fees, corresponding to 25% of the total compensation due under their Law 80 claim. Costs are hereby taxed against defendants in the amount of $2,041.00.

IT IS SO ORDERED.