Thomas A. FLOERCHINGER, Plaintiff,

v.

INTELLICALL, INC., et al., Defendants.

Civ. A. No. 3:92–CV–1358–D.

United States District Court,
N.D. Texas,
Dallas Division.

Oct. 6, 1992.

David Musslewhite, Dallas, Tex., for plaintiff.

Richard M. Kobdish and Rebecca A. Siegel of Johnson & Gibbs, Dallas, Tex., for defendants.

FITZWATER, District Judge:

The instant motion to remand this action to state court requires the court to decide whether the indemnity agreement at issue is an employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. Concluding it is not, the court remands the case to state court.

## I

Plaintiff Thomas A. Floerchinger ("Floerchinger") sued defendants Intellicall, Inc. ("Intellicall"), Nabil El–Hage, Barry B. Conrad, and Hugh E. Humphrey, Jr. in state court, seeking to recover on theories of conspiracy, wrongful termination, breach of employment contract, libel, and breach of indemnity agreement. Defendants removed the case to this court on the basis that Floerchinger's breach of indemnity agreement claim is an action for breach of an employee welfare benefit plan, is preempted by ERISA, and therefore invokes this court's federal question removal jurisdiction. Plaintiff moves to remand the action, contending the indemnity agreement is merely a contract incident to plaintiff's employment, not an employee welfare benefit plan.[1]

## II

### A

An action that presents only state law claims may be preempted by ERISA, which supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described

in ... this title." 29 U.S.C. § 1144(a); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). If a claim is preempted by ERISA, the action falls within the court's federal question jurisdiction and is removable pursuant to 28 U.S.C. § 1441(b). *Taylor*, 481 U.S. at 67, 107 S.Ct. at 1548. As relevant to the present case, in order for ERISA to preempt plaintiff's claim and confer federal question jurisdiction, the cause of action must involve an "employee welfare benefit plan" within the meaning of the statute. *See Williams v. Wright*, 927 F.2d 1540, 1543 (11th Cir.1991); *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 240 (5th Cir.1990). The dispositive issue presented by plaintiff's motion to remand is whether the indemnity agreement constitutes such a plan.

### B

29 U.S.C. § 1002(1) defines an "employee welfare benefit plan" as a plan, fund, or program set up by an employer that provides

(A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 186(c), to which § 1002(1)(B) refers, lists exceptions to the restrictions imposed by § 186(a) and (b) on payments and loans made by an employer to employees, representatives, or labor organizations.[2] The indemnification agreement in

---

1. In their opposition to the motion to remand, defendants request oral argument. This request is denied.

2. 29 U.S.C. § 186(c):
   The provisions of this section shall not be applicable (1) in respect to any money or other thing of value payable by an employer to any of his employees whose established duties include acting openly for such employer in matters of labor relations or personnel administration or to any representative of his employees, or to any officer or employee of a labor organization, who is also an employee or former employee of such employer, as compensation for, or by reason of, his service as an employee of such employer; (2) with respect to the payment or delivery of any money or other thing of value in satisfaction of a judgment of any court or a decision or award of an arbitrator or impartial chairman

question in the present case states, in pertinent part:

> In the event Indemnitee was, is or becomes a party to or witness or other

or in compromise, adjustment, settlement, or release of any claim, complaint, grievance, or dispute in the absence of fraud or duress; (3) with respect to the sale or purchase of an article or commodity at the prevailing market price in the regular course of business; (4) with respect to money deducted from the wages of employees in payment of membership dues in a labor organization: *Provided,* That the employer has received from each employee, on whose account such deductions are made, a written assignment which shall not be irrevocable for a period of more than one year, or beyond the termination date of the applicable collective agreement, whichever occurs sooner; (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents): *Provided,* That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon and in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement; and (C) such payments as are

participant in, or is threatened to be made a party to or witness or other participant in, a Claim by reason of (or arising in part out of) an Indemnifiable

intended to be used for the purpose of providing pensions or annuities for employees are made to a separate trust which provides that the funds held therein cannot be used for any purpose other than paying such pensions or annuities; (6) with respect to money or other thing of value paid by any employer to a trust fund established by such representative for the purpose of pooled vacation, holiday, severance or similar benefits, or defraying costs of apprenticeship or other training programs: *Provided,* That the requirements of clause (B) of the proviso to clause (5) of this subsection shall apply to such trust funds; (7) with respect to money or other thing of value paid by any employer to a pooled or individual trust fund established by such representative for the purpose of (A) scholarships for the benefit of employees, their families, and dependents for study at educational institutions, (B) child care centers for preschool and school age dependents of employees, or (C) financial assistance for employee housing: *Provided,* That no labor organization or employer shall be required to bargain on the establishment of any such trust fund, and refusal to do so shall not constitute an unfair labor practice: *Provided further,* That the requirements of clause (B) of the proviso to clause (5) of this subsection shall apply to such trust funds; (8) with respect to money or any other thing of value paid by any employer to a trust fund established by such representative for the purpose of defraying the costs of legal services for employees, their families, and dependents for counsel or plan of their choice: *Provided,* That the requirements of clause (B) of the proviso to clause (5) of this subsection shall apply to such trust funds: *Provided further,* That no such legal services shall be furnished: (A) to initiate any proceeding directed (i) against any such employer or its officers or agents except in workman's compensation cases, or (ii) against such labor organization, or its parent or subordinate bodies, or their officers or agents, or (iii) against any other employer or labor organization, or their officers or agents, in any matter arising under subchapter II of this chapter or this chapter; and (B) in any proceeding where a labor organization would be prohibited from defraying the costs of legal services by the provisions of the Labor–Management Reporting and Disclosure Act of 1959; or (9) with respect to money or other things of value paid by an employer to a plant, area or industry-wide labor management committee established for one or more of the purposes set forth in section 5(b) of the Labor Management Cooperation Act of 1978.

Event, the Company shall indemnify Indemnitee (without regard to the negligence or other fault of the Indemnitee) to the fullest extent permitted by applicable law, as soon as practicable but in no event later than thirty days after written demand is presented to the Company, against any and all Expenses, judgments, fines, penalties, excise taxes and amounts paid or to be paid in settlement (including all interest, assessments and other charges paid or payable in connection with or in respect of such Expenses, judgments, fines, penalties, excise taxes or amounts paid or to be paid in settlement) of such Claim.

Ind.Agrmt. § 2(a). This agreement does not provide any of the benefits listed in § 1002(1)(A). Therefore, to qualify as an employee welfare benefit plan, the agreement must provide a benefit described in § 1002(1)(B) which, in turn, adopts certain provisions of § 186(c).

■ Section 1002(1)(B) appears to include unambiguously within the purview of an employee welfare benefit plan "any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions)." The Intellicall indemnity agreement would qualify as such a plan pursuant to § 186(c)(2). This provision of § 186(c) permits employers to satisfy court judgments and arbitral awards, and to pay settlements of claims, complaints, grievances, and disputes in the absence of fraud or duress, on behalf of employees, representatives, or labor organizations.

Upon reading § 186(c), however, the meaning of § 1002(1)(B) becomes much less clear. Section 186(c) lists eight exceptions to the restrictions on payments of an employer to employees, representatives, or labor organizations. For example, § 186(c)(1) excepts from the restrictions "money or other thing of value" paid as compensation for services to an employee whose duties include representing the employer in labor relations or who is also an officer or employee of a labor organization. If § 1002(1)(B) is interpreted literally, such compensation constitutes a benefit provided through an employee welfare benefit plan. But Congress did not intend to include current wages as such a benefit. *See Massachusetts v. Morash*, 490 U.S. 107, 115, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1989) ("wages for services performed" are not plan benefit). Section 1002(1)(B) is therefore ambiguous, and it is appropriate for the court to look to the regulations issued by the Secretary of Labor to interpret the statute. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

■ The Secretary of Labor has issued regulations to "clarify the definition of the terms 'employee welfare benefit plan' and 'welfare plan' for purposes of [ERISA]." 29 C.F.R. § 2510.3–1(a)(1) (1991). Of the benefits listed in § 186(c), 29 C.F.R. § 2510.3–1(a)(3) provides that

only those contained in paragraphs (5), (6), (7) and (8) describe benefits provided through employee benefits plans. Moreover, only paragraph (6) describes benefits not described in section 3(1)(A) of the Act [29 U.S.C. § 1002(1)(A)].... Thus, the effect of section (3)(1)(b) of the Act [29 U.S.C. § 1002(1)(B)] is to include within the definition of "welfare plan" those plans which provide holiday and severance benefits, and benefits which are similar....

The Secretary's interpretation of ERISA is entitled to considerable deference. *See Chevron*, 467 U.S. at 844, 104 S.Ct. at 2782 ("[C]onsiderable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer ..."); *see also Memorial Hosp. Sys.*, 904 F.2d at 241 n. 6 ("The regulations prescribed by the Secretary are 'entitled to considerable deference, and we will uphold any interpretation that is reasonably defensible.'" (quoting *Robertson v. Alexander Grant & Co.*, 798 F.2d 868, 870 (5th Cir. 1986), *cert. denied*, 479 U.S. 1089, 107 S.Ct. 1296, 94 L.Ed.2d 152 (1987))). Because the Intellicall indemnity agreement falls solely within § 186(c)(2), and the regulations state that only those benefits described by § 186(c)(5)–(8) are benefits provided

through employee benefit plans, the indemnity agreement on which Floerchinger sues is not an employee welfare benefit plan covered by ERISA.

The Secretary's understanding of §§ 1002(1)(B) and 186(c) is a plausible reading of the relevant statutory language. In adopting ERISA, Congress intended to prevent "abuse and mismanagement of funds that had been accumulated to finance various types of employee benefits." *Morash*, 490 U.S. at 112, 109 S.Ct. at 1671. To do so, Congress created statutory requirements, such as complex reporting obligations, to safeguard employee benefits. *Id.* at 113, 109 S.Ct. at 1672; *Riofrio Anda v. Ralston Purina Co.*, 772 F.Supp. 46, 51–52 (D.P.R.1991), *aff'd*, 959 F.2d 1149 (1st Cir.1992). Severance pay, for example, which accumulates over a period of time and "depends on an employee's salary and length of service," is a type of benefit Congress intended to come within ERISA's coverage. *Id.* at 52. Congress did not intend, however, to include within the purview of ERISA such benefits as payments to discharged employees for unused vacation time, *Morash*, 490 U.S. at 108, 109 S.Ct. at 1669, or relocation benefits, *Riofrio Anda*, 772 F.Supp. at 52, because there is no separate accumulated fund to administer and thus no need to subject an employer to the stringent requirements of ERISA. *Id.*

The indemnity agreement at issue in the present case provides that Intellicall will indemnify Floerchinger for costs incurred as a participant in a claim as a result of his position with the company. This is not the kind of benefit Congress intended to regulate. A payment of this type is not dependent on the tenure of the employee and is not satisfied from a separate accumulated fund. Thus, as with unused vacation time and relocation expenses, there is no need to subject an employer to ERISA's stringent disclosure requirements. The Intellicall indemnity agreement is merely a contract and is not a benefit provided through an employee welfare benefit plan covered by ERISA. Floerchinger's claim that Intellicall breached the agreement is not preempted by ERISA, and this court does not have federal question jurisdiction.

### III

Plaintiff's motion to remand this action to state court is granted. Plaintiff shall recover from defendants his attorney's fees in the sum of $2,175.00 pursuant to 28 U.S.C. § 1447(c).

SO ORDERED.