Leroy ALEXANDER, Plaintiff–Appellant,

v.

ELECTRONIC DATA SYSTEMS CORPO-
RATION; James Jeros; Steven Bre-
chtelsbauer; Jane Doe, Defendants–Ap-
pellees.

No. 92–1591.

United States Court of Appeals,
Sixth Circuit.

Argued March 19, 1993.

Decided Jan. 6, 1994.

James Schuster, Southfield, MI, Lynn H. Shecter (argued & briefed), Roy, Shecter & Vocht, Birmingham, MI, for Leroy Alexander.

Lee J. Hutton (argued), David A. Posner (briefed), Duvin, Cahn, Barnard & Messerman, Cleveland, OH, Gail M. O'Brien, Electronic Data Systems Corp., Southfield, MI, Martin T. Wymer, Electronic Data Systems Corp., Dallas, TX, for Electronic Data Systems Corp.

Gail M. O'Brien, Southfield, MI, for Jane Doe, Steven Brechtelsbauer, James Jeros.

Before: MARTIN and SILER, Circuit Judges; and WELLFORD, Senior Circuit Judge.

WELLFORD, Senior Circuit Judge.

Plaintiff, Leroy Alexander, a Michigan resident, sued defendant, Electronic Data Systems (EDS), a Texas corporation, its manager, its personnel manager, and the staffing manager of its Oakland County, Michigan facility in a Michigan state court. The suit, filed May 1, 1991, sought equitable and monetary relief, asserting that EDS, a self-insured company, had wrongfully rejected the plaintiff's September, 1989 application for a position as systems engineer because he is a diabetic.[1]

Alexander sought to represent a class of applicants for positions at this EDS Michigan facility who were "rejected because either they or members of their family had preexisting medical conditions." Count I asserted handicap discrimination under Michigan Compiled Laws §§ 37.1101–37.1607 (1990). Specifically, in count I, Alexander averred that his "handicap [diabetes] was unrelated to his ability to do the job as systems engineer," and that EDS "had offered Plaintiff Alexander the lower position [associate systems engineer] in order to discourage him from applying for work with EDS."

Count II alleged fraud and misrepresentation in that "EDS represented to Plaintiff that he would be considered for employment ..., required [him] to fill out [a] health history questionnaire ... [and] strongly implied that the health history questionnaire would be used only to determine the extent of coverage once ... employed." The plaintiff claimed damages for fraud and misrepresentation, because, as previously claimed in the handicap discrimination count, defendants' actions "deprived [him] of salary and benefits," because they "did not intend to hire anyone with a preexisting medical condition."

Plaintiff asserted that "[t]he EDS recruiting team instructed the recruiter to offer Plaintiff Alexander a lower position, Associate Systems Engineer," and "Plaintiff Alexander accepted the lower position" and "was told to report to work...." Later, Alexander says in the complaint that he was told "that he should not report to work." He then claimed that he "did not receive either the systems engineer job or any other position with EDS." Plaintiff's complaint may have been construed to assert that he was offered a job as associate systems engineer

---

1. Plaintiff asserted that this condition "did not    affect his ability to do the job."

and that he accepted this position, but was told, nevertheless, not to report to work and, therefore, did not receive any job with EDS because of his diabetic condition. Plaintiff's complaint did not mention any particular action taken or role played by Steven Brechtelsbauer, the alleged manager, by James Jeros, the alleged manager of staffing, or by "Jane Doe," the alleged personnel manager of EDS, but simply avers that "[d]efendants have engaged in unlawful employment practices." Plaintiff did not allege that any defendant other than EDS misrepresented the job situation to him. There is a complete absence of any specific averment of fraud on the part of any defendant.

Within thirty days, the defendants filed a notice of removal in the federal district court. Therein EDS stated that it was a Texas corporation (not, as incorrectly identified, a Delaware corporation). Brechtelsbauer and Jeros admit service of process upon themselves and that they are Michigan residents. Both claim to be fraudulently joined in the suit "solely for the purpose of defeating ... jurisdiction" in the federal court, and claim that the complaint "fail[s] to assert ... any unlawful conduct" as to them.[2]

In the removal action, EDS claimed diversity of citizenship jurisdiction in the federal court and, in the alternative, that plaintiff's claimed causes of action " 'relate to' a plan covered by the Employment Retirement Income Security Act" (ERISA), and "conflict directly with an ERISA cause of action," and therefore invoke federal question jurisdiction.

Within a few days, EDS filed an answer with affirmative defenses. It admitted that a team of systems engineers, including Brechtelsbauer, interviewed plaintiff. On June 21, after defendant EDS began discovery procedures upon plaintiff, Alexander moved to remand the case to state court. Plaintiff asserted that the defendants had the burden of proving fraudulent joinder and that the Michigan Handicappers Civil Rights Act permits suit against an individual or agent. In that motion, plaintiff claimed for the first time that Brechtelsbauer "acted as an agent for EDS by being part of the [EDS] management team that interviewed ... Plaintiff." Once again, plaintiff asserted that he accepted an offer of a "lower position." In addition, plaintiff asserted, for the first time, that Jeros was manager of staffing "and in that capacity directs personnel services." [3] In the motion for remand, plaintiff asserted flatly that he "was never employed by defendant," (without specifying which defendant) and thus was not an "employee" or a plan "participant." [4]

The district court assumed jurisdiction upon the petition for removal based upon its finding that "plaintiff has ... alleged a cause of action which relates to an ERISA plan," and therefore determined the motion to remand to be "inappropriate" by reason of preemption. The district court subsequently dismissed the plaintiff's state law claim and granted the defendants' motion for summary judgment. The plaintiff now appeals, challenging jurisdiction and the decision on the merits. No class action certification was ever granted.

## I. FEDERAL QUESTION JURISDICTION

The initial uncertainty over whether Alexander was ever employed by EDS sparked considerable confusion regarding the district court's jurisdictional basis. In its petition for remand, EDS alleged diversity jurisdiction (based on a fraudulent joinder theory), or in the alternative, jurisdiction based on implied preemption under 29 U.S.C. § 1132 (ERISA's civil enforcement section) and also under 29 U.S.C. § 1144 (the express preemption provision).

The district court assumed jurisdiction upon the petition for removal based upon its finding that Alexander's action was expressly

---

**2.** Jeros states that he did not direct the personnel services of EDS, as alleged, and was not in the recruiting department.

**3.** Plaintiff added that an "executive or manager who formulates or executes employment policies is a proper party."

**4.** Alexander also claimed in the remand action that ERISA does not preempt a state handicap discrimination claim.

preempted by § 1144. Specifically, the court found that the "plaintiff has ... alleged a cause of action which relates to an ERISA plan," and therefore determined the motion to remand to be "inappropriate" by reason of preemption. Consequently, the district court declined to address the possibility of diversity jurisdiction based on fraudulent joinder.

The district court subsequently dismissed the plaintiff's state law claim and granted the defendants' motion for summary judgment. The plaintiff challenges the decision both as to jurisdiction and the merits. We disagree with the district court's stated basis for jurisdiction.

## A. *Jurisdiction Founded Upon a § 1144 ERISA Preemption Defense*

■ Two different sections of ERISA are important in this preemption analysis. The civil enforcement section of ERISA is 29 U.S.C. § 1132. Under that section, anyone who qualifies as a "participant or beneficiary" of an employee benefit plan may sue under ERISA to enforce various rights conferred by ERISA. Section 1132 impliedly preempts actions brought in state court that could have been brought under ERISA's civil enforcement section. · See, e.g., *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 53–56, 107 S.Ct. 1549, 1556–58, 95 L.Ed.2d 39 (1987). Title 29, U.S.C. § 1144 is ERISA's express preemption provision. That section preempts state laws insofar as they "relate to any employee benefit plan." 29 U.S.C. § 1144(a). Distinguishing between § 1132 preemption and § 1144 preemption is important when determining whether a preemption defense raises a federal question supporting federal jurisdiction. As already noted, the district court found federal jurisdiction based on its determination that § 1144 preempted Alexander's claim. We hold that jurisdiction based on § 1144 of ERISA was improper.

In its order denying Alexander's petition for remand, the district court assumed that a successful § 1144 preemption defense would create federal question jurisdiction. The only authority cited in the court's entire discussion of preemption and jurisdiction was *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).

*Ingersoll–Rand*, however, did not address jurisdictional issues. The primary cases involving jurisdiction based on ERISA preemption are *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), and *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

In *Franchise Tax Board*, the Supreme Court restated the general rule regarding removal jurisdiction based on a preemption defense:

> [S]ince 1887 it has been settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case.

*Franchise Tax Board*, 463 U.S. at 14, 103 S.Ct. at 2848. Federal question jurisdiction exists whenever a claim "arise[s] under the ... laws ... of the United States." 28 U.S.C. § 1331. According to the Court, " '[b]y unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby'." *Franchise Tax Board*, 463 U.S. at 12, 103 S.Ct. at 2848 (quoting *Gully v. First National Bank in Meridian*, 299 U.S. 109, 116, 57 S.Ct. 96, 99, 81 L.Ed. 70 (1936)).

■ The Court's hesitancy to find federal question jurisdiction premised on preemption appears partly motivated by respect for the well-pleaded complaint rule. The well-pleaded complaint rule generally provides that the plaintiff is the master of his complaint, and the fact that the wrong asserted could be addressed under either state or federal law does not ordinarily diminish the plaintiff's right to choose a state law cause of action. *Franchise Tax Board*, 463 U.S. at 13, 22, 103 S.Ct. at 2848, 2852; *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). The well-pleaded complaint rule "has been correctly understood to apply, even in cases in which neither the obligation created by state law nor the defendant's factual failure to comply

are in dispute, and both parties admit that the only question for decision is raised by a federal pre-emption defense." *Franchise Tax Board*, 463 U.S. at 12, 103 S.Ct. at 2848 (stating that "the party who brings a suit is master to decide what law he will rely upon").

■ A special corollary to the well-pleaded complaint rule provides that federal question jurisdiction exists when the plaintiff's claim occurs in an area of the law which Congress has so completely preempted that any complaint raising a claim in that area necessarily presents a federal issue. *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). In *Metropolitan Life*, the Supreme Court applied the corollary to a claim that could have been brought under the civil enforcement section of ERISA. As a result, the Court held that the plaintiff's claim was removable to federal court *based on a § 1132 preemption defense* notwithstanding the absence of a federal issue on the face of the complaint.

■ EDS urges us to interpret *Metropolitan Life* as conferring federal question jurisdiction whenever an ERISA preemption defense is raised, regardless of whether the defense is premised on § 1132, § 1144, or some other section. We decline to make such a broad interpretation of *Metropolitan Life.*

The plaintiff in *Metropolitan Life* was a terminated employee who sued for wrongful termination, breach of contract and retaliatory discharge. One of the claims in that case demanded reinstatement of "all benefits and insurance coverages Plaintiff is entitled to." *Metropolitan Life*, 481 U.S. at 61, 107 S.Ct. at 1545. Because Taylor was a former employee of the defendant, he was a "beneficiary" under ERISA, and could have brought his claim for benefits under ERISA's civil enforcement section, § 1132. The defendant removed the case to federal court based on

the § 1132 defense, and the district court accepted pendent jurisdiction over the non-benefit-related claims. *Id.*

While discussing *Franchise Tax Board*, the Court, in *Metropolitan Life*, acknowledged that even ERISA preemption defenses do not generally create federal question jurisdiction. Specifically, the Court noted that, "[i]n *Franchise Tax Board*, the Court held that ERISA pre-emption, without more, does not convert a state claim into an action arising under federal law." *Metropolitan Life*, 481 U.S. at 64, 107 S.Ct. at 1546.

After recognizing that Taylor's action was likely preempted under both § 1144 (the express preemption provision), and § 1132 (the civil enforcement section), the Court focused on the congressional intent surrounding § 1132. The Court noted striking similarities between § 1132 of ERISA, and § 301 of the Labor Management Relations Act (LMRA), and pointed to a Conference Report on ERISA describing the civil enforcement provisions of § 502(a) (29 U.S.C. § 1132) regarding the removability of actions that could have been brought under § 1132. *Metropolitan Life*, 481 U.S. at 65–66, 107 S.Ct. at 1547–48. That Conference Report instructed that:

> [W]ith respect to suits to enforce benefit rights under the plan or to recover benefits under the plan which do not involve application of the title I provisions, they may be brought not only in U.S. district courts but also in State courts of competent jurisdiction. *All such actions in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor–Management Relations Act of 1947.* H.R.Conf. Rep. No. 93–1280, p. 327 (1974).

*Id.* at 65–66, 107 S.Ct. at 1547–1548 (emphasis supplied by the Court).[5] Based on that congressional pronouncement, the Court found that Taylor's action was removable. We interpret the Court's decision as only a

---

5. Until the *Metropolitan Life* decision in 1987, the only statute to which this corollary (allowing removal based on preemption despite the well-pleaded complaint rule) applied was § 301 of the

LMRA. *Metropolitan Life*, 481 U.S. at 63–64, 107 S.Ct. at 1546–47; *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968).

modest encroachment upon the well-pleaded complaint rule:

> Taylor argues strenuously that this action cannot be removed to federal court because it was not "obvious" at the time he filed suit that his common law action was both pre-empted by ... § 1144(a), and also displaced by the civil enforcement provisions of [§ 1132(a) ].... But the touchstone of the federal district court's removal jurisdiction is not the "obviousness" of the pre-emption defense but the intent of Congress. Indeed, as we have noted, even an "obvious" pre-emption defense does not, in most cases, create removal jurisdiction. In this case, however, Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of [§ 1132] removable to federal court. Since we have found Taylor's cause of action to be within the scope of [§ 1132(a) ], we must honor that intent whether preemption was obvious or not at the time this suit was filed.

*Id.* 481 U.S. at 66, 107 S.Ct. at 1547.

As the concurrence made clear, the crucial congressional intent was to allow *removal*, not merely the intent to preempt. The concurrence noted:

> [O]ur decision should not be interpreted as adopting a broad rule that *any* defense premised on congressional intent to preempt state law is sufficient to establish removal jurisdiction. The Court holds only that removal jurisdiction exists when, as here, "Congress has *clearly* manifested an intent to make causes of action ... *removable to federal court.*"

*Metropolitan Life,* 481 U.S. at 67–68, 107 S.Ct. at 1548 (Brennan, J., concurring) (emphasis in original).

In *Metropolitan Life,* the Court clearly found that *an § 1132 preemption defense* confers federal question jurisdiction. *Id.* at 67. The Court was silent, however, about § 1144. We find it telling that the Court in *Metropolitan Life* had the opportunity to find federal jurisdiction based on a § 1144 defense, but declined to do so, instead relying on specific congressional intent relating only to § 1132. Because *Metropolitan Life* only found clear congressional intent to allow removal of actions implicating § 1132, we do not interpret it as directly authorizing the removal of Alexander's action to federal court.

Additionally, we do not believe that *Metropolitan Life* implicitly authorizes removal of actions that are possibly preempted under § 1144. The parties have not highlighted and we have found no clear congressional intent to allow removal of actions that potentially relate to employee benefit plans analogous to the congressional intent clearly manifested in the Conference Report regarding ERISA's civil enforcement section. Moreover, we find instructive the Supreme Court's careful protection of the well-pleaded complaint rule, and its hesitancy to allow removal based on a preemption defense. Consequently, we believe that a defense premised on § 1132 preemption creates federal question jurisdiction, but that one based on § 1144 preemption does not.[6] Therefore, the district court erred by taking jurisdiction founded on EDS' § 1144 preemption defense.[7]

**6.** We recognize that our interpretation of *Metropolitan Life* is not in accord with interpretations of that case by some other courts. *See, e.g., Shiffler v. Equitable Life Assur. Soc.,* 838 F.2d 78, 81–82 (3d Cir.1988) (implying that a meritorious § 1144 defense would confer federal question jurisdiction); *Bennett v. Hallmark Cards Inc.,* No. 92–1073–CV–W–6, 1993 WL 327842 (W.D.Mo., Aug. 17, 1993); *Floerchinger v. Intellicall, Inc.,* 802 F.Supp. 1480 (N.D.Tex.1992); *Czechowski v. Tandy Corp.,* 731 F.Supp. 406 (N.D.Cal.1990).

We also recognize another class of cases involving employer complaints seeking a declaratory judgment regarding obligations under ERISA. In such a context, the possibility of § 1144 preemption appears on the face of the plaintiff's complaint and may result in federal question jurisdiction based on the well-pleaded complaint rule. *See, Northeast Dept. ILGWU Health and Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund,* 764 F.2d 147 (3d Cir.1985). We conclude that this has no application here.

**7.** Even if a § 1144 preemption defense did confer federal jurisdiction, we have serious doubts whether Alexander's action would be preempted under that section. The district court cited only *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), as authority for deeming ERISA preemption sufficiently broad to foreclose a claim in state court that the defendant "employer allegedly refrains from hiring an employee due to possible econom-

### B. Jurisdiction Founded on a § 1132 ERISA Preemption Defense

■ In its opinion granting summary judgment to EDS, the district court noted an additional jurisdictional basis.[8] The court reasoned that Alexander's complaint alleged facts which, if true, would subject his claims to preemption under § 1132. Because a § 1132 preemption defense raises a federal question supporting jurisdiction, the district court found jurisdiction proper under *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. at 1542 (1987). *Alexander v. EDS,* No. 91–CV–72494–DT, slip op. at 4 n. 12 (E.D.Mich.1991). In *Cromwell v. Equicor–Equitable HCA Corp.,* 944 F.2d 1272 (6th Cir.1991), *cert. dismissed,* —— U.S. ——, 113 S.Ct. 2, 120 L.Ed.2d 931 (1992), this court held that jurisdiction on this basis is unfounded. At best, it is unclear as to whether Alexander's complaint alleges that he was ever an employee of EDS. His complaint alleges that he was "offer[ed] ... a lower position" and "Alexander accepted the lower position." Three sentences later, however, Alexander's complaint alleges that "Plaintiff Alexander did not receive either the systems engineer job or any other position with EDS."

As previously noted, § 1132 preempts state claims by "participants or beneficiaries" to enforce certain rights guaranteed by ERISA. Claims by anyone other than a "participant or beneficiary," however, fall outside the scope of ERISA's civil enforcement section. The district court determined that it was entitled to rely on the allegations in Alexander's complaint when determining his status as a "participant" or "beneficiary." *Alexander,* slip op. at 6 n. 14. Because Alexander's complaint could be construed as alleging that Alexander was offered employment by EDS, (and was therefore a potential "participant" in the plan), the court concluded that EDS' § 1132 preemption defense was apparently valid at the time the petition for remand was filed, and that the court had federal jurisdiction pursuant to that defense. We do not reach this same conclusion.

The "majority" decision in *Cromwell v. Equicor–Equitable HCA Corp.* held that a district court must "look to the *complaint* as it existed *at the time the petition for removal was filed* to determine" the matter of federal jurisdiction raised by the defendant's notice of removal. 944 F.2d at 1277 (emphasis added).[9] Both the "concurring" and "dissenting" opinions, however, held that the district court must "make an independent inquiry at the outset to determine whether the plaintiff is a 'participant' ... within the meaning of ERISA, before it turns to the issue of preemption." *Id.* at 1279 (Suhrheinrich, J., concurring). The district court seemed to imply that, with regard to removal jurisdiction, it "could" or "should" rely on the plaintiff's "allegations, as set forth in his complaint, that he accepted employment with EDS." J/A 37, n. 14.

In the plaintiff's motion to remand, he stated:

> Plaintiff alleges that individual defendant Steven Brechtelsbauer acted as an

---

ic detriment on an employee benefit plan." *Ingersoll–Rand,* however, involved a wrongful discharge claim of a long-term employee, and the "existence of a pension plan [wa]s a critical factor in establishing liability under the State's wrongful discharge law." *Id.* at 139–40, 111 S.Ct. at 482–83. In *Ingersoll–Rand,* the Court specifically noted: "[w]e are not dealing here with a generally applicable statute that makes no reference to, or indeed functions irrespective of, the existence of an ERISA plan." *Id.* at 139, 111 S.Ct. at 482. The Michigan statute relied upon by Alexander in his complaint under "handicap discrimination" was MCL §§ 37.1101–37.1607, which is such a generally applicable Michigan statute that functions apart from any ERISA plan.

We are not persuaded that *Ingersoll–Rand* is controlling under the different facts of this case.

Here, we examine the claim of a *non-employee* who claims handicap discrimination and "fraud and misrepresentation," in contrast to McClendon's suit for loss of long-term *employee* benefits.

8. In the denial of Alexander's motion to remand, the court found jurisdiction proper because Alexander's claims "related to" an employee benefit plan. Thus, the court believed it had jurisdiction because it believed that EDS' § 1144 preemption defense was valid.

9. The defendant's notice claimed alternative bases for removal: (1) diversity jurisdiction based upon fraudulent joinder of individual defendants, and (2) federal question jurisdiction under ERISA (preemption).

agent of EDS by being part of the management team that interviewed and denied Plaintiff employment. Mr. Brechtelsbauer was part of the management team that interviewed Plaintiff. Complaint paragraph 16. The team instructed the Recruiter to offer a lower position to Plaintiff. Complaint paragraph 17. The purpose of the lower offer was to discourage Plaintiff from applying for work with EDS. Complaint paragraph 36. Plaintiff accepted. Complaint paragraph 18. He did not receive either position.

Complaint paragraph 21. These actions were in violation of the Michigan Handicappers' Civil Rights Act. Complaint paragraphs 33, 34 and 37.

. . . .

Defendant alleges in paragraph 12 of its removal petition that because plaintiff pleads that he accepted the alleged employment offer, he is "participant" [sic] in an employee benefit plan. Defendant's position is frivolous because plaintiff was *never employed by defendant.*

J/A 52, 53 (emphasis added).

The plaintiff added, in his motion to remand, that to be a "participant" he had to be "actually employed" or a "former 'employee'," citing ERISA provisions and *Coleman v. General Electric Co.,* 643 F.Supp. 1229, 1235 (E.D.Tenn.1986), *aff'd,* 822 F.2d 59 (6th Cir.1987).

We believe that at this juncture an "independent inquiry" by the district court, based upon the pleadings, including the notice of removal and motion to remand, would have made it clear to the district court that the plaintiff had, in effect, abandoned any potential claim to benefits or damages under the ERISA plan, which he conceded applied only to "participants." In point No. 9 of the motion to remand, the plaintiff made it clear that he was *never* an employee or a participant, and he made no claim to be a "beneficiary" under the ERISA plan. We construe the plaintiff's action, as described above, in the motion to remand as an effectual amendment or clarification with respect to disclaiming any rights as an actual or former EDS employee. The district court's appropriate inquiry into, or examination of, the plaintiff's

status at this point would have made it clear that Alexander claimed and had no standing to pursue an ERISA cause of action. "ERISA was enacted 'to promote the interests of employees and their beneficiaries in employee benefit plans.' *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983)" (quoted in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 113, 109 S.Ct. 948, 955, 103 L.Ed.2d 80 (1989)).

We believe that since the plaintiff waived or dropped, as a matter of clarification, any claim as "participant" or "employee," the district court failed to consider his lack of standing to assert any claim under ERISA at the time the issues were drawn on the question of remand to the state court. We hold that the district court erred and acted prematurely in dismissing the plaintiff's state law claims and in granting the defendants' summary judgment on the federal question and preemption issue. Had the proper inquiry under *Cromwell* been made, it would have been clear that Alexander lacked standing to sue under ERISA (because he was never an employee) and that EDS' § 1132 ERISA preemption defense was misplaced (for the same reason). The district court should then have examined the question of jurisdiction by reason of diversity and alleged fraudulent joinder.

## II. DIVERSITY JURISDICTION

Title 28, U.S.C. § 1441(b), provides:

Any civil action of which the districts courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

The jurisdictional question in this case is whether "Jane Doe," James Jeros and Steven Brechtelsbauer, or any of them, were "parties in interest properly joined ... as defendants." If not, complete diversity exist-

ed and EDS had a right to remove this case to federal court based upon diversity of citizenship.

## A. JANE DOE

■ According to the statute governing removal:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

28 U.S.C. § 1441(a).

It is clear that "Jane Doe" is a fictitious name; no such real person was ever named, and plaintiff never identified the alleged person who was "EDS' Personnel Manager in Michigan in [sic] within the time period covered." Section 1441(a) compels that this "named" defendant be disregarded for purposes of diversity jurisdiction.

## B. JAMES JEROS

The complaint refers to this named individual defendant as a Michigan resident, and "EDS' Manager of Staffing in Oakland County [who,] in that capacity directs personnel services. . . ." He is not thereafter named, nor is there further reference in the complaint to the "Manager of Staffing" or the director of "personnel services." The Michigan Handicappers Civil Rights Act protects handicapped persons in public accommodation, housing, and in employment. That part of the Act which relates to employment opportunities makes certain described discriminatory actions by employers unlawful. It is evident that EDS and not James Jeros is *the employer* in this case.

Count II of the complaint is labeled "fraud and misrepresentation." Count II, para-

graphs 42 through 49, inclusive, refer to requirements upon and representations to plaintiff by EDS alone. Nowhere does the plaintiff mention any specific representation by Jeros (or Brechtelsbauer) made to him.

In addressing the sufficiency of pleadings, we must look to state law. In Michigan, "an action in fraud must definitely and issuably set forth the facts complained of and relied upon for recovery." *Dutkiewicz v. Bartkowiak*, 372 Mich. 386, 126 N.W.2d 705, 706 (1964). "A mere allegation or claim of fraud is not sufficient to establish a cause of action based thereon." *Hager v. Hager*, 372 Mich. 288, 125 N.W.2d 865, 867 (1964).[10]

## C. STEPHEN BRECHTELSBAUER

What has been stated as to defendant Jeros applies fully on the count II claims of fraud and misrepresentation against defendant Brechtelsbauer. The question with regard to Brechtelsbauer then becomes: has the plaintiff properly joined him as a defendant, or can the defendants establish that he (and Jeros) were fraudulently joined to defeat federal jurisdiction?

We call to the attention of the district court a case dealing with a situation analogous to the facts of this case, *Fletcher v. Advo Systems, Inc.*, 616 F.Supp. 1511 (E.D.Mich.1985). In *Fletcher*, plaintiff James Fletcher filed suit in Michigan state court alleging wrongful termination and naming as defendants Fletcher's corporate employer, a vice president, and Fletcher's immediate supervisor who, like Fletcher, was a Michigan resident. The defendants removed the case to federal court, claiming that the Michigan resident supervisor had been joined "*solely* to defeat diversity of citizenship." *Id.* at 1512 (emphasis added). As in the instant case, the plaintiff moved for remand to the Michigan state court. The plaintiff's motion was denied, *id.* at 1515, finding that the supervisor was joined for the sole purpose of defeating federal jurisdiction.

■ The burden to establish federal jurisdiction in this case is clearly upon the

---

10. "A declaration or other pleading setting up fraud as a basis for recovery of damages must clearly and distinctly allege all of the essential elements of actionable fraud." 37 C.J.S. *Fraud*, § 81, p. 374.

defendants as the removing party. *Gafford v. General Electric Co.*, 997 F.2d 150, 155 (6th Cir.1993); Charles A. Wright, Arthur A. Miller, et al., *Federal Practice and Procedure*, Vol. 14A, § 3721 (1985). The removing party bears the burden of demonstrating fraudulent joinder. *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 330 (6th Cir.1989). Removal statutes, moreover, are strictly construed. *Wilson v. U.S. Dept. of Agriculture*, 584 F.2d 137, 142 (6th Cir.1978).

> There can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law.... One or the other at least would be required before it could be said that there was no real intention to get a joint judgment, and that there was no colorable ground for so claiming.

*Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 176 (5th Cir.1968). Therefore "the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *Id.* That same circuit restated the question as whether there was any "reasonable basis for predicting that [the plaintiff] could prevail." *Teddler v. F.M.C. Corp.*, 590 F.2d 115, 117 (5th Cir.1979).

Plaintiff relies on *Jenkins v. American Red Cross*, 141 Mich.App. 785, 369 N.W.2d 223 (1985), to support his joinder of Jeros and Brechtelsbauer as officials of the defendant employer. In that case, Jenkins, a long-time black employee, sued under the Elliott–Larsen Civil Rights Act for race discrimination, claiming a discriminatory discharge. Jenkins charged intimate involvement in his allegedly discriminatory termination by an immediate supervisor and the director of the Red Cross office. The district court, on remand, must determine if Brechtelsbauer and Jeros are within the definition of employer/agent under the Michigan Handicappers' Civil Rights Act and *Jenkins*.

"[A]ny disputed questions and fact and ambiguities in the *controlling* state law [should be resolved] ... in favor of the non-removing party." *Carriere v. Sears Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir.), *cert.*

*denied,* 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990) (emphasis added). See also *Kruso v. International Telephone & Telegraph Corp.*, 872 F.2d 1416, 1426 (9th Cir.1989), *cert. denied,* 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990), stating:

> [N]one of the individual defendants are alleged to have done anything wrongful except to cause the corporate defendants to act in an allegedly wrongful manner. The alleged wrongs of which plaintiffs complain are all corporate wrongs. Plaintiffs do not and apparently cannot allege that any of the individual defendants owed them any duty in their individual capacity, nor that they did any act in their individual capacity which violated any such duty or otherwise caused plaintiffs harm except as a result of corporate acts.

We **REVERSE** and **REMAND** this case, accordingly, for a determination of diversity jurisdiction, specifically whether defendants Jeros and Brechtelsbauer were fraudulently joined.