**Jacqueline WINBURN and Barry Winburn, Administrators of the Estate of Yohance A. Winburn, Plaintiffs,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, and Mark Kernahan, Defendants.**

**No. CIV. A. 96–87.**

United States District Court, E.D. Kentucky.

March 25, 1998.

---

See also, 933 F.Supp. 664.

Robert L. Woolery, II, William P. Emrick, McKenzie, Woolery & Emrick, Ashland, KY, Gary R. Hillerich, Haddad Law Office, Louisville, KY, Frederick D. Hatmaker, Louisville, KY, for plaintiffs.

Donald L. Miller, II, Brown, Todd & Heyburn, P.L.L.C., Louisville, KY, for defendants.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

The plaintiffs have moved the Court [Record No. 9] to remand the above-styled action to the Shelby Circuit Court. The defendants have responded [Record No. 11], to which the plaintiffs have replied [Record No. 13].

The defendants have also moved the Court [Record No. 16] for summary judgment. The plaintiffs have responded [Record No. 40], to which the defendants have replied [Record No. 43]. These matters are now ripe for decision.

The following are the pertinent facts. The plaintiffs bring this action based on their dealings with Liberty Mutual Insurance Company ("Liberty Mutual") and its agent, Mark Kernahan ("Kernahan"), following the tragic death of their child. Specifically, this suit arises out of an automobile accident which occurred on June 14, 1995, and resulted in the death of Yohance Winburn. At the time of the accident, Winburn was a passenger in an automobile driven by Brandon Cloyd. Cloyd's vehicle was insured by Liberty Mutual.

Shortly after the accident, Kernahan went by the Winburn's house and left the following note:

06/15/95

12:00 noon

Mr. & Mrs. Winburn:

My name is Mark Kernahan. I'm with Liberty Mutual Ins—The Auto Insurance Company of the Cloyd's.

First just let me say how sorry I am for your loss.

Secondly, you have some benefits available to you under the Cloyd's No Fault Coverage. That will be handled by our *Susan Allison.* You have $1,000.00 in Burial Benefits and we also cover all related medical bills.

My job is to handle the liability aspect, the wrongful death claim. You *do not* need an attorney. We can deal directly together on this. The Cloyds have some liability

coverage and, if you hire a lawyer, you could lose 33% or more.

Whenever you're ready, I'd like to pay you another visit, and let's discuss this. Meanwhile, hang in there.

— MK

PS—I've enclosed a No Fault application. Please complete & return to us. (I've filled out for you what I could).

Based on the above note and various statements Kernahan allegedly made to Thomas Sampson ("Sampson"), Shelby County Coroner, and Fred Hatmaker ("Hatmaker"), plaintiffs' counsel, the plaintiffs claim that the defendants have violated the Unfair Claims Settlement Act, acted in bad faith, and violated the Consumer Protection Act. The defendants point out that they settled the plaintiffs' wrongful death claim for $500,-000, and they categorically deny the plaintiffs' allegations.[1]

 Federal jurisdiction in this matter is predicated on diversity jurisdiction. The plaintiffs, as administrators of the estate of Yohance Winburn, are imputed with the decedent's state of citizenship, namely Kentucky. *Adler v. Adler*, 862 F.Supp. 70, 72 (S.D.N.Y.1994). Liberty Mutual is a corporation organized under the laws of Massachusetts, and its principal place of business is Massachusetts. The defendant Mark Kernahan is a resident of Kentucky. Complete diversity exists, if at all, only if Kernahan has been joined to defeat complete diversity as evidenced by the fact that none of the proffered theories of recovery against him could possibly stand. *Alexander v. Electronic Data Systems Corp.*, 13 F.3d 940, 949 (6th Cir.1994) (citation omitted). Thus, the Court must determine whether there is a reasonable basis in law and fact to believe that Kernahan acted in bad faith and violated the Unfair Claims Settlement Act.[2] *Id.*

In *Matt v. Liberty Mutual Insurance Company*, 798 F.Supp. 429, 433 (W.D.Ky. 1991), the court stated the following about the law of bad faith in Kentucky:

[t]o support a recovery it was incumbent upon appellant to allege and prove that Meridian's conduct was of such an arbitrary and reprehensible nature as to constitute bad faith.... Bad faith is a general and somewhat indefinite term.... It is not simply bad judgment. It is not merely negligence. It imports a dishonest purpose of some moral obliquity. It implies conscious doing of wrong.... It partakes of the nature of fraud. (internal citations and quotes omitted).

The plaintiffs have also made a claim under the Unfair Claims Settlement Act, and it states, in pertinent part, that:

It is unfair claims settlement practice for any person to commit or perform any of the following acts or omissions:

(6) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

*See* KRS 304.12–230(6).[3]

The plaintiffs at bar base their claims on the following facts: (1) Kernahan waited only 14 hours after the accident before going over to the plaintiffs' house in an effort to settle their claims; (2) Kernahan's note attempted to dissuade them from obtaining counsel; (3) the phrase "some liability coverage" is non-specific;[4] (4) Kernahan attempted to get the note back from the Winburns; (5) Kernahan allegedly told Sampson that he wanted to find the plaintiffs in order to settle with them for $25,000; (6) someone acting on behalf of the defendants allegedly made a pretextual

---

1. The issue of whether the attorneys for the plaintiffs deliberately misled the Court by indicating that Kernahan told the Winburns that the policy limit was $25,000 instead of $1,250,000 will be dealt with in a later order.

2. The alleged violation of the Consumer Protection Act was addressed in *Winburn v. Liberty Mutual Ins. Co.*, 933 F.Supp. 664 (E.D.Ky.1996). The Court will adhere to its previous analysis where it held that the plaintiffs' claims under the

Consumer Protection Act were invalid due to a lack of privity.

3. Although the plaintiffs reference other subsections of the Unfair Claims Settlement Act, subsection (6) is the only one that could potentially apply.

4. This phrase was used in Kernahan's note to the Winburns.

telephone call to the Winburns; and (7) Hatmaker claims that Kernahan indicated to him that there was only "minimum coverage" available and that Liberty Mutual would settle the case for $25,000. Each of the plaintiffs' points will be addressed.

■ The plaintiffs first argue that Kernahan acted improperly when he attempted to settle the plaintiffs' wrongful death claim within hours of the accident. However, the Unfair Claims Settlement Act states that insurance companies must be "prompt" when dealing with undisputed claims, and Kernahan was certainly timely in his efforts to settle their claims. *See* KRS 304.12–230(6). Additionally, poor judgment and bad manners do not rise to the level of bad faith. *See Blue Cross and Blue Shield v. Whitaker*, 687 S.W.2d 557, 559 (Ky.Ct.App.1985). Hence, even if Kernahan showed poor judgment by attempting to settle the plaintiffs' claims shortly after the accident, this is still not bad faith.

■ The plaintiffs also state that Kernahan acted improperly when he stated in the note that the plaintiffs did not need counsel. The mere suggestion, however, on a handwritten note that the plaintiffs did not need counsel is insufficient to justify a bad faith claim. In fact, the plaintiffs rejected Kernahan's advice and obtained counsel who settled the wrongful death claim for $500,000. Therefore, even if Kernahan's statement about not needing counsel was somehow inaccurate, the plaintiffs were not harmed.[5]

■ The plaintiffs further claim that the phrase "some liability coverage" is misleading when referring to $1,250,000. Although the phrase is unclear, it is not misleading and is certainly not a misrepresentation. An example of a fraudulent or misleading statement would have been if Kernahan had of told the plaintiffs that $25,000 was the policy limit when in fact the limit was $1,250,000.

Once again, the elements of causation and damages are missing because the plaintiffs found out the policy limit and settled for $500,000.

Although the plaintiffs claim mental anguish and stress as part of their damages, they concede that Kernahan never expressed to them the exact amount of the coverage, nor directly made them an offer. Furthermore, the Winburns only found out months later from their attorney about any alleged misrepresentation. The fact that the Winburns may have misinterpreted the phrase "some liability coverage" in Kernahan's note is irrelevant.

■ The plaintiffs also argue that Kernahan's alleged attempt to retrieve his handwritten note from the Winburns was improper. Because the Court has found that the note was not improper, Kernahan's attempt to retrieve the note was not improper.

■ Additionally, the plaintiffs assert that Kernahan told Sampson that he was looking for the Winburns because he wanted to settle with them for $25,000. One of the problems, however, is that Sampson did not communicate his alleged conversation with Kernahan to the plaintiffs. Hence, the plaintiffs could not have been harmed by this communication.[6]

■ The plaintiffs further allege that someone on behalf of the defendants made a pretextual call asking them who their insurance company was at the time of their son's death. The call, however, was allegedly made after the defendants had settled with the plaintiffs for $500,000. Consequently, this unsubstantiated allegation is totally irrelevant to the plaintiffs' underlying claims.

■ Next, at the Rule 11 hearing,[7] Hatmaker revealed for the first time that Kernahan told him that he would settle the case for $25,000.[8] Even if Kernahan told Hatmaker

---

5. In other words, there is no causation or damages associated with Kernahan's statement.

6. If Sampson never told the plaintiffs about his alleged conversation with Kernahan, then the elements of causation and damages are missing. Additionally, even if Kernahan initially offered to

settle for $25,000, this is negotiating strategy, not bad faith.

7. This hearing occurred on December 18, 1996.

8. Although the Court finds it very interesting that Mr. Hatmaker never did mention this episode in the complaint or in the "source of allegation"

that Liberty Mutual would settle the case for $25,000, this statement is not a misrepresentation. A fair and equitable settlement is usually achieved through negotiations, involving multiple offers and counteroffers. In this case, the parties settled for $500,000, and it is undisputed that $500,000 was a fair settlement for the wrongful death claim. Therefore, the fact that Kernahan might have told Hatmaker that Liberty Mutual would pay $25,000 to settle the plaintiffs' claims is not bad faith unless Liberty Mutual refused to go any higher or refused to consider reasonable counteroffers.[9]

■ Hatmaker also claims that Kernahan told him that only "minimum coverage" was available and that he relayed Kernahan's message to the plaintiffs. Hatmaker further asserts that Kernahan's statements relating to minimum coverage led him to pursue other courses of recovery for his clients. The fact, however, that Hatmaker may have misconstrued some of Kernahan's statements does not mean that he acted in bad faith. Once again, it should be emphasized that the plaintiffs settled the wrongful death claim for $500,000, and they knew the policy limit was $1,250,000 when they settled.

■ Finally, the plaintiffs argue that if all the above events are viewed cumulatively, they make out a prima facie case for bad faith and/or a violation of the Unfair Claims Settlement Act. What the plaintiffs fail to see, however, is that all of the above-mentioned events are highly speculative and lack substance.[10] Even if all the above incidents

occurred, there is still no reasonable basis in law and fact to believe that Kernahan acted in bad faith or violated the Unfair Claims Settlement Act. Based on the above analysis, it is clear that Kernahan has been fraudulently joined, and the Court has jurisdiction over this action.

■ The next issue the Court will address is whether Liberty Mutual and Kernahan should be granted summary judgment.[11] The plaintiffs argue that summary judgment is improper because additional discovery needs to be performed. Specifically, they want time to depose Richard Fowler, the supervisor of Kernahan, and Kelly Merrick, Kernahan's successor at Liberty Mutual. They also want to obtain some documents from Liberty Mutual.[12] The problem, however, is that the plaintiffs failed to state how deposing Fowler and Merrick or obtaining more documents could possibly shed new light on the pertinent facts of this case. *See Bettin v. Nelson,* 744 F.2d 53, 58 (8th Cir. 1984).

For example, the basic facts surrounding the plaintiffs' claims are known and undisputed: (1) Kernahan never told the Winburns that there was a $25,000 policy limit or made any misrepresentation directly to them;[13] (2) Kernahan never told Sampson that there was a $25,000 policy limit;[14] (3) the note left by Kernahan does not mention the amount of $25,000; Sampson never told the Winburns about any conversation he allegedly had with Kernahan;[15] (4) the Winburns' only knowledge surrounding the allegation of misrepre-

---

brief, the Court, for the purpose of this Memorandum Opinion and Order, will assume Mr. Hatmaker is telling the truth.

9. Although Hatmaker construed Kernahan's statements to mean that Liberty Mutual was offering to settle for $25,000, Hatmaker never did make a counteroffer or directly ask Kernahan what the policy limit was on the Cloyd's insurance policy. Hence, it seems that neither party was actually negotiating when Hatmaker alleges that Kernahan made him an offer.

10. In other words, 0 + 0 + 0 still equals zero. If individually the plaintiffs' evidence has no value, then adding all them together does not effect the validity of the plaintiffs' claims.

11. The plaintiffs offered the affidavit of a retired Kentucky Court of Appeals judge in support of

their position that Kernahan's acts are sufficient to constitute a bad faith claim. It is the Court's job, however, to determine what the law is on a given issue, and it places no value on the expert affidavit. Instead of referring to a retired judge's opinion on what the law ought to be in Kentucky, the plaintiffs should have cited some case law that would have backed up their position.

12. They also have made a request for production of certain documents.

13. *See* Barry Winburn's deposition, p. 34.

14. *See* Sampson deposition, p. 153.

15. *See* Sampson deposition, pp. 135–36.

sentation in the complaint comes from their attorney, and they learned of the allegation several months after the passing of their child;[16] and (5) Liberty Mutual settled the case for $500,000, not $25,000. Additionally, the plaintiffs have not challenged the defendants' assertion that they told the Shelby Circuit Court that they were ready for trial in October of 1996.[17]

Moreover, even if both Fowler and Merrick claimed that Kernahan's conduct was improper and in bad faith, the plaintiffs' claims would still be missing the elements of causation and damages.[18] Thus, because the plaintiffs failed to show the relevancy of any further discovery, the Court will not reserve its ruling on the defendants' summary judgment motion.[19]

In determining whether summary judgment should be granted, it should be pointed out that Liberty Mutual's liability is based upon Kernahan's actions. Therefore, since there is no reasonable basis for the claims against Kernahan, both Kernahan and Liberty Mutual will be granted summary judgment. Accordingly,

**IT IS ORDERED:**

(1) That plaintiffs' motion to remand [Record No. 9] be, and the same hereby is, **DENIED;**

(2) That the defendants' motion for summary judgment [Record No. 16] be, and the same hereby is, **GRANTED;**

(3) That the plaintiffs' motion to set for trial be, and the same hereby is, **DENIED AS MOOT.**

---

**16.** *See* Jacqueline Winburn deposition, pp. 16–17.

**17.** The defendants should supplement the record with a copy of the video from the Shelby Circuit Court.

**18.** Additionally, the plaintiffs fail to state how their requests for documents could possibly change the basic facts of this case.

**19.** Moreover, the Court fails to see any benefit in further discovery. *See also Ryan v. Compton,* 840 F.2d 17, 1988 WL 12817 (6th Cir.1988) (unpublished).