KAREN NELSON MOORE, Circuit Judge,
dissenting.
Plaintiff Joseph Casias lives in Michigan. Defendant Troy Estill lives in Michigan. The parties in this case are not diverse. In determining that the district court nonetheless had diversity-based subject-matter jurisdiction over this state-law case on the basis of fraudulent joinder, the majority improperly answers an unsettled question of Michigan law, contrary to our caselaw directing us to resolve ambiguities in state law in favor of remand. Moreover, the majority reaches out to answer this first unsettled question of Michigan law in order to address a second unsettled question of Michigan law. In so doing, we overstep our bounds as a federal court, and I respectfully dissent.
A defendant is fraudulently joined, and the court may disregard his citizenship for diversity jurisdiction purposes, only if “ ‘it be clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law.’ ” Alexander v. Elec. Data Sys. Corp., 13 F.3d 940, 949 (6th Cir.1994) (quoting Bobby Jones Garden Apartments, Inc. v. Suleski, 391 F.2d 172, 176 (5th Cir.1968)). The *438 question is whether “ ‘there is arguably a reasonable basis for predicting’ ” that the allegedly fraudulently joined defendant could be liable. Id. (quoting Bobby Jones Garden Apartments, 391 F.2d at 176); see also Coyne v. Am. Tobacco Co., 183 F.3d 488, 493 (6th Cir.1999) (no fraudulent joinder “if there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants”). Because cases that are in federal court on the basis of diversity jurisdiction involve questions of state law, the values of federalism and comity instruct that a federal court “must resolve ‘all disputed questions of fact and ambiguities in the controlling ... state law in favor of the non removing party.’ ” Coyne, 183 F.3d at 493 (quoting Alexander, 13 F.3d at 949). The question of whether “ ‘there is arguably a reasonable basis for predicting’ ” that a defendant could be liable is not the same as whether such a claim would succeed. Alexander, 13 F.3d at 949 (citation omitted).
Here, it is far from clear that there is no “reasonable basis for predicting” that Es-till could be liable for wrongful termination under Michigan law. Under Michigan law, “a corporate employee or official is personally liable for all toi'tious or criminal acts in which he participates, regai’dless of whether he was acting on his own behalf or on behalf of the corporation.” Att’y Gen. v. Ankersen, 148 Mich.App. 524, 385 N.W.2d 658, 673 (1986). Michigan courts have simply not addressed the issue of a corporate employee’s personal liability in the context of a common-law wrongful-termination claim and thus have not ruled on how such an employee “participates” in a wrongful termination.[1] In the context of a fraudulent-joinder ruling, federal courts are not free to predict how a state court would rule on an unsettled issue of state law; if the state law is unclear as to whether a non-diverse defendant could face liability, the federal court has no subject-matter jurisdiction and must remand the case.
Even applying the standard for agency liability under Michigan’s Elliotfi-Larsen Civil Rights Act (“ELCRA”), the issue of Estill’s liability under the circumstances in this case is not clear. Michigan courts have held that “a supervisor need not have complete authority over hiring, firing, promoting or disciplining” to be personally liable as an employer’s agent for discriminatory-employment actions under the EL-CRA. Urbanski v. Sears Roebuck & Co., No. 211223, 2000 WL 33421411, at *3 (Mich.Ct.App. May 2, 2000). Estill is the store manager, which certainly suggests some degree of control over personnel decisions; more importantly for present purposes, Wal-Mart has not shown that Estill lacked such control.
Indeed, Estill clearly had authority to terminate Casias, because he was the person who actually fired Casias. See R. 1-3 (Estill Decl. at 4) (Page ID # 37) (“I was directed ... to terminate Plaintiffs employment for failing his drug test.”). Accordingly, Estill is not like the human resources assistant in Urbanski who neither made nor had the authority to make the challenged termination decision. See 2000 WL 33421411, at *4. Similarly, Estill is not akin to the “receptionist or secretary who typed the termination letter” in the district court’s hypothetical. Casias v. Wal-Mart Stores Inc., 764 F.Supp.2d 914, 920 (W.D.Mich.2011). A supervisor who fires *439 an employee at the direction of upper management is different from a co-worker who informs the employee of the decision or a secretary who types the termination letter. At the least, Michigan courts have not ruled on whether this distinction is relevant for purposes of establishing liability, and the conclusion that it is relevant is reasonable.
Ultimately, too many questions remain unanswered regarding E still’s role in Casias’s termination to conclude that no reasonable possibility exists that Estill could be liable as a participant in the termination. We do not know if Estill informed Wal-Mart of the drug test results or if Estill was told of the results at the same time he was told to fire Casias.[2] We do not know if Estill took any action pursuant to Wal-Mart’s directive to fíre Casias other than telling Casias that he was fired; we do not know, for example, whether Estill removed Casias from the payroll (or instructed human resources to do so) or performed other tasks implementing the termination decision.[3] These are questions that could be answered in the course of discovery.
It is not clear whether Casias could prove that Estill participated in the allegedly unlawful conduct, but the claim is sufficiently “colorable” to defeat an accusation of fraudulent joinder and to mandate remand to state court. Therefore, I respectfully dissent.

. The majority cites two cases for the proposition that "Michigan courts recognize limitations on the ability to attach personal liability to corporate actors.” Interestingly, both cases held that the actor involved was personally liable. See Citizens Ins. Co. of Am. v. Delcamp Truck Ctr., Inc., 178 Mich.App. 570, 444 N.W.2d 210 (.1989); Trail Clinic, P.C. v. Bloch, 114 Mich.App. 700, 319 N.W.2d 638 (1982).

. Federal district courts in Michigan are divided on whether a supervisor’s “informational input” can subject him to liability for an unlawful employment action, compare Young v. Bailey Corp., 913 F.Supp. 547, 551 (E.D.Mich.1996) (liability), with Yanakeff v. Signature XV, 822 F.Supp. 1264, 1266 (E.D.Mich.1993) (no liability), and the Michigan courts have not addressed the issue.

. The district court repeatedly asserts that Estill simply communicated Wal-Mart's termination decision to Casias, but this is not an established fact. As noted above, Estill's own declaration states that Wal-Mart "directed [Estill] to terminate Plaintiff's employment.” R. 1-3 (Estill Decl. at 4) (Page ID # 37).